# IRVING V. M. ABB *v.* MARGUERITE C. CROSSFIELD

[No. 99, September Term, 1974.]

*Decided October 21, 1974.*

The cause was argued before MORTON, MOORE and LOWE, JJ.

*John S. McInerney* for appellant.

*Arthur B. Hanson* for appellee.

LOWE, J., delivered the opinion of the Court.

On July 16, 1963 Marguerite Cary Abb [1] on behalf of her infant daughter, Mara Abb, filed a Complaint for Initiation of Reciprocal Support Proceedings in the District of Columbia Court of General Sessions. She was a resident of the District, her former husband, Irving V. M. Abb, a resident and member of the Bar of Maryland. They had been married on February 24, 1950 in Annapolis. Mara was born on December 30, 1953 and her parents were divorced December 20, 1957 by decree awarded by the Second Judicial District Court of Nevada. The record indicates that copies of the decree and the separation agreement which had been incorporated therein, were admitted into evidence at the hearing on the complaint.

On July 22, 1963, Judge Joseph C. Waddy found that the defendant had a duty to support his daughter and recommended support payments of $325 per month. He ordered that the necessary papers be forwarded to the responding State of Maryland for further proceedings under the Uniform Reciprocal Enforcement of Support Act, (URESA) Md. Code, Art. 89C. Although the Complaint and affidavit of Mrs. Abb appear in our sparse and disordered record, the decree and separation agreement do not. Whether they were forwarded to Maryland with the other documents is uncertain.

An evidentiary hearing was held on November 26, 1963 in what was then the Montgomery County People's Court for Juvenile Causes, Judge Alfred D. Noyes presiding. Mr. Abb personally appeared, while Mrs. Abb was represented by private counsel. The "formal record" of the hearing consists of the court reporter's transcribed summary of the proceedings. Significantly, she wrote that:

"Mr. Abb told the Court there is no question as to his duty to support the child . . . ."

---

1. Upon subsequent remarriage her name changed to Marguerite Cary Crossfield.

... "They had a separation agreement which was kept for some years, but then she started changing her living arrangements so often. He is perfectly willing to keep up with this separation agreement."

According to the reporter, at the conclusion of the hearing, the Court:

" ... advised that because there is no testimony *regarding the needs of anything further than the* separation agreement an order should be entered in that amount."

Contrary to his acknowledged responsibility, during the years which followed, Mr. Abb was regularly in arrears on his support payments despite his expressed intentions, and was frequently brought before the court on contempt proceedings.

On January 19, 1973 Mrs. Abb petitioned the Circuit Court of Montgomery County — which had assumed jurisdiction for URESA actions on July 1, 1972 — for increase in child support. Following a hearing on the petition at which evidence of Mara Abb's expenses was introduced, Judge Joseph M. Mathias found that both Mara Abb's needs and defendant's ability to pay had increased. On May 25, 1973 he ordered Mr. Abb to pay $450 per month from February 1, 1973 onward and $500 for plaintiff's legal fees.

On June 4, 1973 Mr. Abb filed a suggestion of majority with the court pointing out that Chapter 651, Laws of Maryland 1973, effective July 1, 1973, changed the age of majority in this State from 21 to 18, and that the dependent Mara Abb was over 18. Mr. Abb then ceased support payments and was held in contempt by Judge Philip M. Fairbanks on December 21, 1973.

## ISSUES

The Court of Appeals in *Zouck v. Zouck*, 204 Md. 285, 300 alludes to the Uniform Reciprocal Enforcement of Support Act as evidence of a Legislative policy favoring "liberality toward the enforcement in Maryland of the claims of

non-resident wives and children entitled to support." Despite that policy of liberality appellant claims that Mrs. Abb, having chosen to introduce her Nevada decree and support agreement as evidence of a "duty to support" in a URESA action initiated in the District of Columbia, rather than directly instituting Maryland enforcement proceedings on her Nevada decree, cannot rely on the provisions of the incorporated support agreement requiring payments until her daughter's 21st birthday to demonstrate the inapplicability of Maryland's 18 year old majority law.

### Decree and Support Agreement

As a preliminary hurdle, appellant suggests that the decree and separation agreement have "not been introduced into evidence at any hearing." The record clearly indicates that the documents were introduced at the initiation phase of the proceeding in the District of Columbia. Although it is not certain that the documents themselves were forwarded to or introduced at the respondent phase of the proceeding in the Peoples' Court, the reporter's record explicitly relates appellant's desire that the court order support in accordance with the agreement, and the court's acquiescence in that request. Thus it is evident that Judge Noyes' finding of Mr. Abb's duty to support "imposed or imposable under the laws" of this State, Md. Code, Art. 89C, § 7, was predicated on evidence of the support agreement and Mr. Abb's adherence to it.

The breadth of the language in the definitions included in the URESA makes clear that the act was intended to provide a convenient enforcement mechanism for a broad spectrum of "duties of support." Md. Code, Article 89C, § 2 (g), explains:

> " 'Duty of Support' includes any duty of support imposed or imposable by law, or by any court, order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate maintenance or otherwise."

The appellant correctly points out that Mrs. Abb could have sought enforcement of her decree and separation agreement in the Maryland courts as a foreign judgment. It does not follow, however, that the availability of that option should be construed as precluding a URESA action initiated in another jurisdiction. The very purpose of the Act is to enable a person to whom a duty of support is owed to enforce that duty without having to leave ·the home jurisdiction. Adoption of appellant's position would defeat the Legislative intent to provide convenient enforcement in every case where the parties had previously obtained a final judgment regarding support.

Equally unpersuasive is appellant's contention that the adoption of Chapter 295, Laws of 1965, now §§ 31-39 of Art. 89C, providing for registration of foreign support decrees, affected Mrs. Abb's URESA action. Art. 89C, § 31 specifically says:

> "If the duty of support is based on a foreign support order, the obligee has the *additional remedies* provided in the following sections." (Emphasis added).

### Equitable Powers

Appellant, relying on *Altemus v. Altemus*, 18 Md. App. 273, argues that Art. 89C does not enable the hearing court to exercise general equity powers. It is difficult to discern how appellant finds support in *Altemus* for his proposition. There the Court of Special Appeals simply held that the Lord Mansfield Rule relating to testimony in certain paternity cases, Md. Code, Art. 16, § 66F (b), was superseded by the Md. Code, Art. 89C, § 21 provision making laws attaching a privilege against disclosure of husband and wife communications inapplicable in URESA actions.

More to the point, the Court of Appeals has held that proceedings under Md. Code, Art. 89C are equitable actions. *Commonwealth of Pa. v. Warren*, 204 Md. 467. After so declaring, the Court added:

> "In this State a court of equity has the power and full right to decide without a jury every question of

law and fact which may arise out of the subject matter before it and over which it has jurisdiction. . . ."

In *McCabe v. McCabe*, 210 Md. 308 the Court held a foreign alimony decree enforceable in equity in this State after pointing out:

" . . . [I]f the wife in this case were . . . residing in another state and proceeding under the URESA against her husband who was in this State, the husband could be made to obey orders to support by sanctions available in equity." *McCabe*, 210 Md. at 315.

These cases and a fair reading of Md. Code, Art. 89C, particularly § 25, suggest that the court in a URESA action has at its disposal whatever equitable powers are necessary to effectuate the purpose of the Act.

Accordingly, when the Circuit Court on May 25, 1973 modified the 1963 order by raising the amount of support from $100 per month, as provided by the support agreement, to $450 per month, it was properly exercising its equitable powers. *Wooddy v. Wooddy*, 258 Md. 224, 228.

Having established that evidence of the divorce decree and support agreement were properly relied on by the People's Court in its support order, later modified by the Circuit Court, the age of majority question is easily resolved. The support agreement which formed the basis of the original order provided for Mr. Abb's support payments:

"until the said child reaches her 21st birthday or becomes self-supporting."

The explicit language of that agreement provision coupled with the subsequent July 1, 1973 effective date of the majority statute, Md. Code, Art. 1, § 24 and its undisputed prospective application, compel the conclusion that appellant's support order is unaffected by the Act. *Monticello v. Monticello*, 271 Md. 168.

The two questions formally posed by appellant — whether there is an obligation to support a minor child after age

eighteen and whether the separation agreement may be enforced — are both answered in the affirmative under the circumstances set forth.

The record reveals to us two disturbing facts. Appellant admits not having contributed to his daughter's support since *July 1, 1973*. Delays and continuances brought forth a letter dated *April 10, 1973*, to the Clerk of the Circuit Court for Montgomery County in opposition to one of the requested continuances. Among the reasons for the opposition appears the following paragraph:

> "No payments at all have been made by Mr. Abb under the existing Court order in this matter. Mr. Abb's daughter is about to be dropped from the rolls of Catholic University because there are no funds available for this young lady's tuition. Accordingly, this case must go before a judge if justice is to be served.

This is confirmed by unpaid tuition bills introduced in the case.

The record reveals that by repeated contempt proceedings and numerous continuances appellant has received justice through his "day in court" ten times over. The hour for reciprocal justice to Mara Abb should no longer be delayed. In affirming the judgment our mandate shall issue forthwith.

*Judgment affirmed.*
*Mandate to issue forthwith.*
*Costs to be paid by appellant.*