436 So.2d 1122 (1983)
Roy A. HELMICK, Appellant,
v.
Elizabeth M. HELMICK, Appellee.
No. 82-562.
District Court of Appeal of Florida, Fifth District.
September 8, 1983.
Leon B. Cheek, III, Altamonte Springs, for appellant.
Jim Smith, Atty. Gen., and James A. Peters, Asst. Atty. Gen., Tallahassee, for appellee.
*1123 ORFINGER, Chief Judge.
This is an appeal from an order requiring appellant (former husband) to provide support to his former wife under the provisions of chapter 88, Florida Statutes (1981), the Uniform Reciprocal Enforcement of Support Act (URESA). We affirm.
This action commenced as a petition to enforce alimony and child support not connected with a dissolution of marriage. The wife, residing in Maryland, instituted the action under URESA, and it was transmitted to the circuit court of Orange County. During the pendency of this action, the appellant and the appellee obtained a Maryland divorce wherein appellant was required to pay, as alimony, $180 per month to appellee. The Orange County action was subsequently transferred to Seminole County, appellant's county of residence.
After several hearings before a domestic relations commissioner, the former husband filed a petition to modify the Maryland judgment insofar as it awarded alimony, contending that the judgment had been registered under the provisions of section 88.321, et seq., Florida Statutes (1981), and that the Florida court now had jurisdiction to modify the award based on changed circumstances. The Department of Health and Rehabilitative Services was ordered to appear in the action and argued that the Maryland judgment had not been registered. At the final hearing before the commissioner, it was found that the former husband had the ability to comply with the alimony award, that the Maryland judgment had not been registered in Florida, and that the court had no jurisdiction to modify the Maryland judgment. The commissioner recommended that the former husband be required to pay the support award of $180 per month and that he make up certain arrearages. The trial court specifically adopted the commissioner's findings and ordered appellant to comply with the award recommended by the commissioner.
The appellant first contends that URESA, section 88.081, et seq., Florida Statutes (1981), applies only to child support and not to alimony. Florida's URESA has been construed to apply to alimony as well as child support. See, e.g., Thompson v. Thompson, 93 So.2d 90 (Fla. 1957); Friedly v. Friedly, 303 So.2d 50 (Fla. 2d DCA 1974). Appellant contends, however, that the 1979 amendment to the statute now indicates a contrary legislative intent. He refers to section 88.012, which says, in part:
Common-law and statutory procedures governing the remedies for the establishment and enforcement of orders of support for children by responsible parents under the Uniform Reciprocal Enforcement of Support Act have not proven sufficiently effective or efficient to cope with the increasing incidence of establishing and collecting child-support obligations when the petitioner and respondent reside in different states... . (emphasis added).
Appellant contends that by this passing reference to child support only, the legislature intended URESA to only apply to child support and to no longer apply to alimony. However, if this was the legislature's intent in reenacting URESA, it should have clearly expressed this intent by providing new definitions. Section 88.012 is the only section in the entire act which emphasizes child support. Nowhere else is it even attempted to distinguish between alimony and child support or any other type of support. In fact, section 88.031(3) defines "duty of support" to mean:
A duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for dissolution of marriage, separation, separate maintenance, or otherwise, and includes the duty to pay arrearages of support past due and unpaid.
and section 88.031(19) defines "support order" as:
any judgment, decree, or order of support in favor of a petitioner, whether temporary or final or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.
*1124 If the legislature had meant to distinguish between child support and alimony it would have defined this term, especially in light of previous judicial interpretation applying URESA to alimony awards. Therefore, the trial court did not err in applying URESA to alimony support.
Appellant next contends that the trial court erred in rejecting his petition to modify the support award, contending that the Florida courts have jurisdiction to modify a foreign support order when it is registered here under the provisions of section 88.321, et seq., Florida Statutes (1981). The commissioner's last report found that the Maryland support order had not been registered in Florida, and the trial court adopted this finding. Appellant points to nothing in the record to rebut that finding. Therefore, we do not find the issue raised by appellant to be properly before us. Since the trial court found that the support order had not been registered and that finding cannot be successfully attacked, anything we would say about the power (or abuse of power) of the trial court to modify a registered support order would be dictum, and we leave that question to be determined in a case which squarely presents the issue.
There appears competent substantial evidence to support the trial court's findings and we find no abuse of discretion in the enforcement of the order of support.
The judgment of the trial court is AFFIRMED.
COBB, J., concurs.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially:
This case involves (1) the enforcement in Florida under section 88.081-88.331, Florida Statutes (1981), of the Uniform Reciprocal Enforcement of Support Act (URESA) of a husband's duty to support, in the absence of a prior order of support, a wife residing in a foreign state, (2) the enforcement of a foreign support order registered under sections 88.321-88.371, Florida Statutes (1981), and (3) the authority and jurisdiction of a Florida court to "modify" a registered foreign support order.
In 1976 appellee, a then undivorced wife, initiated in Maryland where she resided, a URESA proceeding for child support and alimony unconnected with the dissolution of marriage. The proceeding was sent for prosecution to Florida, as responding state, where the then husband-father (obligor) resided. The obligor's counsel was able to effectively cause a stay of the enforcement proceeding by merely suggesting in a response that a divorce action was then pending in Maryland[1] and the proceeding languished. The marriage of the parties was dissolved in 1977 by a Maryland judgment, a copy of which was sent to and placed in the pending Florida enforcement proceeding. The Maryland judgment required the appellant former husband to pay alimony of $180 per month. The pending enforcement proceeding was transferred from Orange County to Seminole County in 1978 where, with prodding from Maryland, it was awakened in 1979. The years 1980 and 1981 were consumed by legal proceedings. Over the years the youngest child of the parties grew of age so the former husband's counsel contended that URESA civil enforcement proceedings under sections 88.081, et seq., Florida Statutes, were available only for child support and not for alimony. In August of 1981 a domestic relations commissioner found the court had jurisdiction to proceed with enforcement of alimony because the Maryland judgment had been filed and registered under URESA section 88.321, et seq., Fla. Stat. (1981). This resulted in further delay and motivated the former husband to file a petition to vacate registration of the Maryland divorce judgment[2] collaterally attacking the Maryland *1125 judgment on grounds, among others, that the Maryland judgment was void because of lack of personal jurisdiction over the husband. The husband filed an affidavit saying that he had been a continuous resident of Florida since 1966 and in July, 1981, the then domestic relations commissioner found that affidavit sufficient to rebut the presumption that the Maryland court had jurisdiction and to shift to the former wife the burden to prove otherwise. Under the claimed authority of section 88.371(2), Florida Statutes (1981), the former husband also filed a supplemental complaint for modification against the former wife. At long last, after many further continuances, it appeared that in his affidavit the former husband forgot to mention that in October, 1976, he had personally filed an answer in the Maryland divorce proceeding thereby giving the Maryland court personal jurisdiction over himself. About this time the legal representatives of the state attorney's office and of the Department of Health and Rehabilitative Services disagreed as to which state agency should represent the former wife under section 88.345, Florida Statutes (1981).[3] Some good came of this because it led to the discovery that the Maryland divorce judgment had, in fact, not been registered by the obligee under section 88.341, Florida Statutes (1981). The matter was finally considered in October, 1981, at which time the former husband argued that he was financially unable to pay the $180 per month alimony ordered in Maryland in 1977 because of his need to support a new wife and two children acquired after his divorce from his former wife. The domestic relations commissioner painstakingly summarized and carefully considered the case and recommended an adjudication of arrearages for 51 months ($9,180); that monthly periodic payments of alimony of $180 be commenced and that modification be denied in view of the purposes of URESA. The trial court overruled objections to the commissioner's report and adopted the recommendations and entered judgment accordingly. This appeal followed. This opinion,[4] considering the legal issues argument concerning which was part of the long delay in this case, was written with hope of helping the trial bench eliminate similar delays in other cases.
DID THE TRIAL COURT ERR IN HOLDING URESA APPLIES TO ALIMONY AS WELL AS CHILD SUPPORT?
Prior to October 1, 1979, Florida's URESA was construed to apply to alimony as well as child support.[5] When originally enacted in 1955 the URESA was enacted in almost identical form to the uniform act proposed by the National Conference of Commissioners on Uniform State Laws.[6] Thereafter, on October 1, 1979, the legislature revised the act so that it conformed *1126 with a substantial revision made of the uniform act in 1968.[7] In doing so, the legislature enacted section 88.012 setting out the legislative intent of the act which stated, in part:
Common-law and statutory procedures governing the remedies for the establishment and enforcement of orders of support for children by responsible parents under the Uniform Reciprocal Enforcement of Support Act have not proven sufficiently effective or efficient to cope with the increasing incidence of establishing and collecting child-support obligations when the petitioner and respondent reside in different states... . (emphasis added)
Appellant contends that by this passing reference to child support only, the legislature intended URESA to only apply to child support and to no longer apply to alimony. However if this was the legislature's intent in reenacting URESA, it should have clearly expressed this intent by providing new definitions. Section 88.012 is the only section in the entire act which specifies child support. Nowhere else is it even attempted to distinguish between alimony and child support or any other type of support. In fact, section 88.031(19) defines "support order" to mean
any judgment, decree, or order of support in favor of a petitioner, whether temporary or final or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered.
If the legislature had meant to distinguish between child support and alimony it would have redefined this term, especially in light of previous judicial interpretation applying URESA to alimony awards.[8] Therefore the trial court did not err in applying URESA to alimony support.
DID THE TRIAL COURT ERR IN HOLDING THAT THE SUPPLEMENTAL COMPLAINT FOR MODIFICATION COULD NOT BE CONSIDERED BY THE FLORIDA COURT?
In determining whether the trial court erred in declining to consider appellant's Supplemental Complaint for Modification, both the appellant and the appellee seem to agree that the answer depends upon whether or not appellee ever registered the foreign divorce decree. This is not necessarily determinative.

FULL FAITH AND CREDIT CLAUSE
In the absence of URESA or a similar statute, when a person living in one state is entitled to support from another person living in another or foreign state, the person entitled to support has to travel to the foreign jurisdiction for relief. If there is no previously adjudicated right to support, the person in need of support (the obligee) must travel to, and bring suit in, the foreign state in order to obtain personal jurisdiction over the person having the duty to support (the obligor) because without personal jurisdiction over the obligor there can be no valid (enforceable) support order (money judgment). In the absence of URESA provisions even if there is a previously adjudicated right to support, as in the case of other foreign money judgments, the obligee must bring an action in Florida to domesticate the foreign judgment by reducing it to a judgment here and then enforcing it as a Florida judgment. The cause of action in Florida to reduce the foreign money judgment to a Florida judgment is based on the full faith and credit clause of the United States Constitution.[9] The full faith and *1127 credit clause requires this state to give as much credence and effect to a decree of a foreign state as this state gives to a decree of its own. If the foreign decree is jurisdictionally sound,[10] this state is bound by the doctrine of res judicata to judicially recognize all matters adjudicated in the previous judgment. For example, a foreign judgment for arrearages is entitled to full faith and credit in this state[11] and, as such, is subject to equitable enforcement measures.[12] Similarly, when applied to arrearages that are past due under a foreign decree but not reduced to judgment, the duty of support established by the foreign decree is entitled to full faith and credit. Therefore so long as past due arrearages are unalterable, as they become due they become finally adjudicated and are fully recoverable.[13] If the past due arrearages are alterable or modifiable by the court which originally entered the order of support, the duty of support established by the foreign decree is not final and therefore not entitled to full faith and credit.[14] Florida courts, for the most part, have made the above distinction and applied the full faith and credit clause when enforcing past due arrearages of a foreign support order so long as the arrearages are not modifiable by the court entering the original decree.[15]
However, the full faith and credit clause and the doctrine of res judicata apply only to issues that are finally determined by the foreign judgment. A foreign decree that determines a duty to support and sets the amount of support is subject to modification in the future and is therefore only res judicata of the duty to support under the circumstances existing at the time of the judgment.[16]To this extent, it can be established as a local decree and thereafter enforced as a local decree.[17] However, as a local decree it is subject to modification and its enforcement in equity is subject to equitable defenses.[18] In Lopez v. Avery, 66 So.2d 689 (Fla. 1953), the Florida Supreme Court recognized that a Florida court could not "modify" a foreign decree in this respect. However when a petitioner seeks to have a foreign decree domesticated in Florida and the respondent answers and seeks modification, the Florida court has jurisdiction over the parties and the cause and can determine what duty of support is owed under circumstances as they presently exist (as opposed to the circumstances existing at the time the original decree was entered). Thus, although a Florida decree cannot modify a foreign decree, in this respect it supersedes it. 66 So.2d at 693-94. Notwithstanding the above intricacies and distinctions of the application of the full faith and credit clause, in the absence of URESA an obligee seeking to enforce a support duty owed by an obligor in a foreign jurisdiction must travel to the foreign jurisdiction *1128 and submit to the jurisdiction of that court. Since this encompasses substantial expense and is usually beyond the means of the person seeking support, many support obligations were not enforced and many obligees became wards of the various states' welfare programs.

URESA
Against this background, in 1950 the National Conference of Commissioners on Uniform State Laws and the American Bar Association created URESA and in 1968 substantially revised the uniform act.[19] The uniform act was created in an effort to facilitate enforcement of support duties and substantially departs from previous law by not requiring the person seeking support to travel to, or submit to the jurisdiction of, the foreign or responding court.[20] The act basically has three means of accomplishing its goal: Criminal Enforcement (part II),[21] Civil Enforcement (part III),[22] and Registration of Foreign Support Orders (part IV).[23] This case involves only the application and interrelationship of the provisions for Civil Enforcement and Registration of Foreign Support Orders.

CIVIL ENFORCEMENT
Under Civil Enforcement provisions a petitioner (the obligee) files a motion for support in the appropriate court of the state in which the petitioner resides,[24] which is called the "initiating court."[25] The initiating court reviews this motion and determines if it demonstrates that the respondent owes a duty of support to the petitioner and that the courts of the responding state can obtain jurisdiction over the respondent. Once this initial determination is made, the initiating court sends the petition (along with other appropriate papers) to the state where the respondent resides, which is called the "responding state,"[26] where the petition is filed and docketed as a case[27] and prosecuted by the appropriate state functionary; in Florida, the state attorney.[28] The responding court must obtain jurisdiction over the respondent (the obligor).[29] Thereafter, after a noticed hearing and the taking of evidence as to the nature and extent of the duty of support, the court enters an order of support.[30]
Under URESA in general, and the Civil Enforcement provisions in particular, the only real issue is the obligor's duty of support and ability to meet that duty;[31] no collateral issues are allowed.[32] This is because *1129 the act, consistent with its purpose and objective, specifically provides that the responding court does not have jurisdiction over the petitioner for any other issue.[33] Although a URESA action under the Civil Enforcement provisions may be based on previously entered orders of support,[34] a previous support order is not essential, only facts giving rise to a duty to support.[35] Furthermore, regardless of any previous support order, it is the responding court and not the initiating court that makes the final determination of the amount of support required to be paid by the respondent in the responding state. Although an initiating court's determination of an amount of support needed by the petitioner and that respondent is able to provide may be prima facie evidence of this need and ability,[36] this determination is not binding on the respondent court.[37] The responding court is free to enter an award higher than a previous award[38] or lower than a previous award.[39] Although the responding court determines the amount of support required in the URESA proceeding, this determination does not modify the initiating state's, or any other state's, previous order of support.[40] Amounts paid under the order of a responding state are merely credited against amounts due under the unmodified support order of an initiating state.[41] The act itself specifically answers the conflict of laws question as to which law is to be applied in determining the duty and amount of support. Section 88.081 specifically provides:
Choice of law.  Duties of support applicable under this act are those imposed under the laws of any state where the respondent was present for the period during which support is sought. The respondent is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.
Thus, unless it is shown that the respondent was in a foreign jurisdiction during the period of time for which support is sought, the responding state determines the duty of support owed by the respondent under the laws of the responding state.[42]

REGISTRATION OF FOREIGN SUPPORT ORDERS
In addition to the Civil Enforcement provisions of URESA, sections 88.321 through 88.371, Florida Statutes (1981), constitute the Registration of Foreign Support Orders portion of URESA. Section 88.321 specifically provides that this portion of the act provides an additional remedy if the duty of support is based on a foreign support order.[43] To initiate these proceedings the obligee[44] *1130 transfers to the clerk of the circuit court where registration is sought: three copies of the order (including all modifications), one copy of the reciprocal enforcement act of the state where the order was entered, and a verified statement by petitioner stating petitioner's mailing address, respondent's mailing address and place of residence, the amount of support remaining unpaid, a description and location of property available for execution within the jurisdiction of the court, and a list of all other states where the order is presently registered.[45] Upon receipt of the above, the clerk files these documents in the Registry of Foreign Support Orders which constitutes registration.[46] The operative provision of the act is section 88.371, which provides in part:
(1) Upon registration, the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner.
* * * * * *
(3) At the hearing to enforce the registered support order, the respondent may present only matters that would be available to him as defenses in an action to enforce a foreign money judgment and matters concerning a substantial change in the circumstances of the parties relating to the obligation of support.
In the instant case, appellant contends that since the first commissioner found that appellee had registered her foreign support order, the later commissioner should have considered appellant's supplemental petition to modify. Appellee responds that since the later commissioner determined that the support order had never been registered, it correctly denied considering appellant's supplemental petition to modify. However, as can be seen from the above section, the statute is concerned with enforcement and satisfaction of the foreign support order and does not specifically provide for modification. There is a dearth of Florida case law on the subject[47] and appellant's cases are not on point.[48] Other states have construed provisions identical to section 88.371 as allowing the registered foreign orders to be modified.[49]
*1131 Notwithstanding that some jurisdictions and the parties to this appeal speak in terms of modification of registered support orders, technically this is a misuse of the term "modification." The act cannot, and does not attempt to, give the Florida court jurisdiction to modify the support order of another jurisdiction. However that poses no practical problem because the real question is whether the Florida court must enforce the foreign support judgment. As a matter of sound public and judicial policy a Florida judge should not be bound to enforce a prior foreign support order when the facts indicate that the parties' circumstances have changed since the foreign support order was entered and strict enforcement of the foreign support order would be unconscionable when applied to the circumstances then present before the trial court. The act recognizes this and gives the trial court broad latitude in enforcing the foreign support order. The act does not even give the trial court personal jurisdiction over the obligee such that the trial court's relitigation of the support issue could arguably be viewed as "superseding" the foreign decree.[50] The trial court need simply consider the issues and factors normally argued to support a modification to determine the appropriateness of the use of the court's extraordinary remedy of civil contempt as a tool to enforce the registered foreign support award. Accordingly, section 88.371(1), Florida Statutes (1981), should be read to provide that proceedings to enforce the registered foreign support judgment are subject to the defenses and procedures for reopening, vacating or staying as are support orders of this state and proceedings to enforce support orders of this state.
The objective of URESA to protect a support obligee from the difficulty and expense of litigating in a foreign jurisdiction while aiding the obligee to enforce support obligations, applies to the method of enforcement by registration of support orders, the same as to the original civil enforcement method.[51] By merely registering a foreign support order an obligee does not thereby submit to the jurisdiction of the circuit court so that the obligor can obtain personal service of process on the obligee for any purpose by merely serving the prosecuting attorney whose duty is only to enforce the registered foreign order.[52]
It appears that in this case the commissioner did consider in mitigation and defense of enforcement the factors argued for *1132 modification but determined that appellant could well afford the amount of support needed by the appellee and adjudicated in 1977 in Maryland. The trial court did not err in fully enforcing the foreign judgment.
NOTES
[1] See section 88.255, Fla. Stat. (1981), which provides in part, "a responding court shall not stay the proceeding or refuse a hearing under this act because of any pending or prior action or proceeding for divorce... ."
[2] Section 88.371(2) limits the time within which the respondent may petition to vacate the registration to 25 days after the mailing of the notice of registration. Allegations demonstrating compliance with this time limitation are noticeably omitted from the petition to vacate in this case. An investigation of this defect would have lead to the discovery of facts which would have eliminated much of the legal argument in this case.
[3] Section 88.345, Florida Statutes (1981), is patently ambiguous because it can be read to mean that the prosecuting attorney will in any event, either upon the request of the court or upon the request of the Department of Health and Rehabilitative Services, represent the obligee or it can be read that the obligee will be represented by the prosecuting attorney upon the request of the court or, in the absence of such request, that the obligee will be represented by the Department of Health and Rehabilitative Services.
[4] See Maszewski v. Piskadlo, 318 So.2d 226, 228, n. 1 (Fla. 2d DCA 1975) (Schwartz, A.J., dissenting); Insurance Co. of N.A. v. Pasakarnis, 425 So.2d 1141, 1142, n. 1 (Fla. 4th DCA 1982) (Schwartz, A.J., dissenting).
[5] See, e.g., Thompson v. Thompson, 93 So.2d 90 (Fla. 1957); Friedly v. Friedly, 303 So.2d 50 (Fla. 2d DCA 1974). Prior to the adoption of URESA in 1955, Florida had previously enacted the Uniform Support of Dependents Act (1953 act). The purpose of the 1953 act was "to secure support for dependent wives and children," while the purpose of the URESA was to provide support "to any person to whom a duty of support is owed." In construing these two purposes, the URESA act was determined to be much broader than the previous Uniform Support of Dependents Act. Thompson.
[6] Compare §§ 88.011, et seq., Fla. Stat. (1955), with Uniform Reciprocal Enforcement of Support Act (1950 act), 9A U.L.A. 747 (1979).
[7] Ch. 79-383 Laws of Fla. Compare §§ 88.011, et seq., Fla. Stat. (1979), with Revised Uniform Reciprocal Enforcement of Support Act (1968 act), 9A U.L.A. 643-746 (1979).
[8] In addition to Florida, numerous other states have held URESA applicable to alimony provisions. See, e.g., Mehrstein v. Mehrstein, 54 Cal. Rptr. 65, 245 Cal. App.2d 646 (1966); Henry v. Henry, 115 Ga. App. 211, 154 S.E.2d 298 (1967); Alig v. Alig, 220 Va. 80, 255 S.E.2d 494 (1979). Cf. Parker v. Parker, 593 S.W.2d 857 (Tex.Civ.App. 1980) (while past due alimony was vested and subject to full faith and credit, no future alimony would be awardable through URESA because alimony was contrary to the public policy in Texas).
[9] U.S. Const. art. IV, § 1.
[10] The full faith and credit clause does not make a foreign decree better than a decree of the home state, thus jurisdictional defects are not cured simply by enforcing the decree in a foreign jurisdiction. See, e.g., Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946); Villano v. Harper, 248 So.2d 205 (Fla. 3d DCA 1971).
[11] See, e.g., Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); Sackler v. Sackler, 47 So.2d 292 (Fla. 1950); Palladay v. Palladay, 422 So.2d 1108 (Fla. 5th DCA 1982); Courtney v. Warner, 290 So.2d 101 (Fla. 4th DCA 1974).
[12] See, e.g., Sackler; McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511 (1944).
[13] See, e.g., Yarborough v. Yarborough, 290 U.S. 202, 54 S.Ct. 181, 78 L.Ed. 269 (1933) (child support); Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910) (alimony).
[14] Sistare, 218 U.S. at 16-17, 30 S.Ct. at 686.
[15] See, e.g., Sackler; Boyer v. Andrews, 143 Fla. 462, 196 So. 825 (1940); Berger v. Hollander, 391 So.2d 716 (Fla. 2d DCA 1980); Fugassi v. Fugassi, 332 So.2d 695 (Fla. 4th DCA 1976); Courtney; Villano. Cf. Palladay v. Palladay, 422 So.2d 1108 (Fla. 5th DCA 1982) (making the above distinction but applying principles of comity instead of full faith and credit).
[16] Lopez v. Avery, 66 So.2d 689 (Fla. 1953).
[17] Sackler. The decree in Sackler was enforced under principles of comity; however, the full faith and credit clause would seem to apply as well.
[18] Sackler; Palladay; Courtney.
[19] See Uniform Reciprocal Enforcement of Support Act, 9A U.L.A. 643, 647 (1979).
[20] Abe v. Crossfield, 23 Md. App. 232, 326 A.2d 234 (1974).
[21] §§ 88.061-88.065, Fla. Stat. (1981). This section provides for extradiction of an obligor to a state where he is charged with the crime of non-support, but can be defeated if the obligor is willing to comply with any order of support entered by the responding state. See, e.g., Jackson v. Hall, 97 So.2d 1 (Fla. 1957). This section is not involved in the instant case.
[22] §§ 88.081-88.311, Fla. Stat. (1981).
[23] §§ 88.321-88.371, Fla. Stat. (1981).
[24] § 88.111, Fla. Stat. (1981).
[25] § 88.031(5), Fla. Stat. (1981).
[26] § 88.031(17), Fla. Stat. (1981).
[27] § 88.181, Fla. Stat. (1981).
[28] § 88.181(2), Fla. Stat. (1981).
[29] § 88.181(2), Fla. Stat. (1981).
[30] See §§ 88.181, 88.193, 88.211, Fla. Stat. (1981).
[31] See, e.g., Clarke v. Blackburn, 151 So.2d 325 (Fla. 2d DCA 1963); Blois v. Blois, 138 So.2d 373 (Fla. 1st DCA 1962).
[32] Thus a URESA order requiring support payments cannot make the payments conditional upon visitation rights. See, e.g., Florida Department of Health and Rehabilitative Services v. Ciferni, 429 So.2d 92 (Fla. 2d DCA 1983); Grosse v. Grosse, 347 So.2d 1099 (Fla. 2d DCA 1977); Vecellio v. Vecellio, 313 So.2d 61 (Fla. 4th DCA 1975). Cf. Kirby v. Kirby, 405 So.2d 207 (Fla. 3d DCA 1981), pet. dism'd 412 So.2d 467 (Fla. 1982) (trial court could condition child support payments on enforcement of visitation rights where court was proceeding not only under URESA but also was proceeding in conjunction with dissolution of marriage action). Nor can a URESA action be turned into another type of proceeding such as child custody, Vecellio (dicta), or divorce. Blois v. Blois, 138 So.2d 373 (Fla. 1st DCA 1962).
[33] Section 88.291, Florida Statutes (1981), provides:

Effect of participation in proceedings.  Participation in any proceeding under this act does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding.
[34] See, e.g., Wright v. Wright, 411 So.2d 1334 (Fla. 4th DCA 1982); Grosse v. Grosse, 347 So.2d 1099 (Fla. 2d DCA 1977).
[35] See, e.g., Vecellio v. Vecellio, 313 So.2d 61 (Fla. 4th DCA 1975); Clark v. Clark, 139 So.2d 195 (Fla. 2d DCA 1962).
[36] Clark v. Clark, 139 So.2d 195 (Fla. 2d DCA 1962).
[37] See, e.g., Jackson v. Hall, 97 So.2d 1 (Fla. 1957); Clarke v. Blackburn, 151 So.2d 325 (Fla. 2d DCA 1963).
[38] See, e.g., Rohrer v. Kane, 609 P.2d 1121 (Colo. App., Div. 1, 1980) (respondent ordered to pay $250 per month in URESA action, notwithstanding previous foreign decree only required $100 per month support).
[39] See, e.g., Grosse v. Grosse, 347 So.2d 1099 (Fla. 2d DCA 1977) (respondent ordered to pay $42 per month in URESA action, notwithstanding previous foreign order required $160 per month).
[40] Wright v. Wright, 411 So.2d 1334 (Fla. 4th DCA 1982).
[41] § 88.281, Fla. Stat. (1981).
[42] See, e.g., Jackson v. Hall; Clarke v. Blackburn.
[43] The Registration provisions provide a remedy unavailable under the civil enforcement provisions in at least one situation. A foreign support order can be registered in a state other than the respondent's residence, for example a state where respondent owns assets that can be levied on for enforcement. See, e.g., Pinner v. Pinner, 33 N.C. App. 204, 234 S.E.2d 633 (1977) (husband and wife divorced in Florida, husband moved to Pennsylvania, wife moved to North Carolina, wife registered Florida decree in North Carolina).
[44] § 88.331, Fla. Stat. (1981).
[45] § 88.351(1), Fla. Stat. (1981).
[46] § 88.351(2), Fla. Stat. (1981).
[47] The only Florida case that mentions modification in considering section 88.371 is Friedly v. Friedly, 303 So.2d 50 (Fla. 2d DCA 1974). There, the court said that modification would be justifiable upon proof of "change of circumstances" but reversed the Florida trial court's reduction of a registered Connecticut decree because the particular facts did not warrant the reduction.
[48] Appellant cites Maloney v. Maloney, 396 So.2d 1227 (Fla. 2d DCA 1981), and Kirby v. Kirby, 405 So.2d 207 (Fla. 3d DCA 1981), pet. dism'd 412 So.2d 467 (Fla. 1982), for the proposition that registered foreign support orders are modifiable by Florida courts. In Maloney it is not apparent whether the wife, living in Michigan, was proceeding against the husband, living in Florida, under the civil enforcement provisions or the registration of a foreign support order. In either case, the parties' divorce was obtained in Florida and therefore the court's holding that the former husband was entitled to seek modification of the final decree was obviously not based on any right within URESA. Similarly, Kirby was not a pure URESA action but was also a Florida dissolution of marriage proceeding and thus modification of the support provisions of the final judgment were obtainable in Florida regardless of the URESA action.
[49] See, e.g., Ball v. Haughton, 60 Ill. App.3d 562, 17 Ill.Dec. 888, 377 N.E.2d 78 (1978), rev'd on other grounds, Haughton v. Haughton, (1979) 76 Ill.2d 439, 31 Ill.Dec. 183, 394 N.E.2d 385, cert. den. 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980); Abe v. Crossfield, 23 Md. App. 232, 326 A.2d 234 (1974); Pinner v. Pinner, 33 N.C. App. 204, 234 S.E.2d 633 (1977); Monson v. Monson, 85 Wis.2d 794, 271 N.W.2d 137 (1978), ovrld. on other grounds Ennis v. Ennis (1979 App.), 88 Wis.2d 82, 276 N.W.2d 341; Alig v. Alig, 220 Va. 80, 255 S.E.2d 494 (1979). Cf. Ackerman v. Yanoscik, 601 S.W.2d 72 (Tex.Civ.App. 1980) (although court held that the only defenses to a registration action of an Ohio decree would be lack of jurisdiction or procedural defects that rendered the judgment void, the judgment in question was only for past due amounts that were vested and not enforcement of future amounts).
[50] See the above reference to Lopez v. Avery and the application of the full faith and credit clause to the prospective effect of continuing orders of support. Notes 15-18, supra and accompanying text.
[51] We note many anomalous aspects of the statutory procedure for registration and enforcement of foreign support orders. The registration is not unlike the recording of domestic civil judgments in the Official Records Book maintained by the clerk of the circuit court as a public record in a capacity completely independent of his position as court clerk. See §§ 88.341 and 28.222(3)(c); 28.29; 55.07; 55.10; 55.101, Fla. Stat. (1981); yet the statutes consider the registration to be in the circuit court (see §§ 88.331 and 88.351, Fla. Stat. (1981)) and to be a case to be docketed by the clerk (see § 88.351(2), Fla. Stat. (1981), which contains some language obviously copied and adapted from section 88.181(1), Florida Statutes (1981)). The statutes refer to the obligee as a petitioner (see §§ 88.345, 88.351, Fla. Stat. (1981)), yet requires only a verified statement from the obligee which is not even served on, or mailed to, the obligor (§ 88.351(2), Fla. Stat. (1981)) and provides for the obligor to petition to vacate the registration or for other relief. The clerk by mail notifies the obligor of the registered foreign support order only after registration (§ 88.351(2), Fla. Stat. (1981)). The statute does not state how or on whom the obligor's petition to vacate is to be served; presumably, the prosecuting attorney, who is also required to be notified of the registration by the clerk. The statute avoids all questions as to the acquisition of personal jurisdiction by service of process on or by the obligor or the obligee. The failure of this statute to clearly envision a procedure consonant with legal practice and theory relating to constitutional due process concepts of court jurisdiction leaves much to be desired.
[52] See § 88.351(2), Fla. Stat. (1981).