𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## MARILYN K. ALIG

v.

## ROBERT ALAN ALIG

June 8, 1979.

Record No. 771562.

Present: All the Justices.

(*John J. McLaughlin [D.C.]; Philip J. Santa Maria [Md.]; Pendleton & McLaughlin,* on briefs), for appellant.

(*Osie H. Gay, Jr.,* on brief), for appellee.

Case submitted on briefs.

COCHRAN, J., delivered the opinion of the Court.

By decree entered September 22, 1971, in the Circuit Court for Montgomery County, Maryland, Marilyn K. Alig was granted a divorce *a vinculo matrimonii* from her husband, Robert Alan Alig, and was awarded custody of the parties' minor children. The decree directed Alig to pay his former wife $300 per month as alimony.

Alig, who moved to Virginia Beach shortly after his divorce, kept the alimony payments required by the divorce decree current through July of 1972. However, he made no payments for the months of August, 1972 through December, 1975.

Alig testified that his failure to make alimony payments during this period resulted from a telephone conversation he had with Mrs. Alig on August 1, 1972. On that date, Mrs. Alig drove to Norfolk seeking to locate Alig and to determine whether he had custody of the children. The children had been taken from Mrs. Alig by Maryland juvenile authorities during the latter part of July pending a hearing, scheduled for August 2, 1972. She was unable to locate Alig but managed to reach him by telephone. According to Alig, she stated during this conversation that she did not plan to attend the custody hearing and that she had had enough of him, his children and his money. Relying upon this statement, Alig ceased making alimony payments. He testified, however, that he expected Mrs. Alig to communicate with him later and to "change her words", and he asserted that he would have been willing to resume the payments if she had notified him. Mrs. Alig denied that there was any discussion during the telephone conversation concerning money or alimony.

Mrs. Alig returned to Maryland from Norfolk on August 2, 1972, by cab, paying a taxi driver $1,000 for the transportation. Later

that day she was taken into custody by two policemen and placed in a psychiatric hospital where she remained for several months. She had a history of mental and emotional problems for which she had received psychiatric treatment during the course of her marriage. After Mrs. Alig was released from the hospital in Maryland, she returned to her parents' home in Illinois, where she was again placed under psychiatric care for several months.

Mrs. Alig did not communicate with Alig concerning his failure to make monthly alimony payments until May 7, 1975. Upon Alig's refusal to resume the payments, she instituted a proceeding in the Juvenile and Domestic Relations Court of the City of Virginia Beach for enforcement of the alimony provisions of the Maryland decree and payment of arrearages. That court denied her petition for arrearages, but ordered Alig to resume alimony payments of $150 per month beginning January 1, 1976.

On August 1, 1976, Mrs. Alig petitioned the court to vacate its former order and reopen the case. A hearing was held on this petition on September 8, 1976, and the court, while again denying her request for arrearages, ordered that alimony payments be increased to $300 per month.

Both Alig and Mrs. Alig appealed this decision to the circuit court, where a hearing was conducted on May 19, 1977. In a letter opinion dated June 30, 1977, the chancellor ruled that Mrs. Alig was entitled to payments of $300 per month as of May, 1975, the month she first communicated with Alig concerning resumption of the payments.* The chancellor ruled, however, that Mrs. Alig was equitably estopped from recovering any arrearages for the months of August, 1972 through April, 1975. Furthermore, her request for attorneys' fees and for interest on past due alimony was denied. She has appealed the final decree denying her the full relief which she sought.

■ A foreign decree for alimony is entitled to full faith and credit, under Article IV Section 1 of the United States Constitution, as to past due installments, if the right to such installments is "absolute and vested", that is, not subject to modification in the state where the decree was rendered. *Sistare* v. *Sistare*, 218 U.S. 1,

---

*Hence, the court ordered Alig to pay arrearages of $300 per month for the months of May, 1975 through December, 1975 and $150 per month for the months of January, 1976 through August, 1976.

16-17 (1910); *McKeel* v. *McKeel,* 185 Va. 108, 112, 37 S.E.2d 746, 748 (1946). But a judgment rendered in one state need not be recognized or enforced in a sister state insofar as the judgment remains subject to modification in the state of rendition, either as to past due sums or as to sums that will accrue in the future. *Sistare* v. *Sistare, id.;* Restatement (Second) of Conflict of Laws, § 109 (1971).

■An examination of relevant Maryland case law discloses that an alimony decree in that state may be modified both in respect to installments which have accrued and those not yet due. *Winkel* v. *Winkel,* 178 Md. 489, 15 A.2d 914 (1940), cited with approval in *Johnson* v. *Johnson,* 241 Md. 416, 216 A.2d 914 (1966). *See Brown* v. *Brown,* 75 A.2d 140 (D.C. 1950); *Fainberg* v. *Rosen,* 12 Md. App. 359, 278 A.2d 630 (1971). Hence, a Maryland alimony decree does not possess such a degree of finality as to be entitled to the full faith and credit mandate of the Federal Constitution.

■Even though Virginia courts are not compelled under the full faith and credit clause to recognize and enforce a Maryland decree for alimony, upon principles of comity a foreign decree may be recognized and treated "with the same force and effect as if it had been entered in Virginia". *McKeel* v. *McKeel, supra* at 113, 37 S.E.2d at 749. *See Worthley* v. *Worthley,* 44 Cal. 2d 465, 283 P.2d 19 (1955); *Light* v. *Light,* 12 Ill. 2d 502, 147 N.E.2d 34 (1957); *Mosher* v. *Mosher,* 25 Wash. 2d 778, 172 P.2d 259 (1946); Annot., 132 A.L.R. 1272 (1941). In *McKeel,* we specifically approved use of the comity doctrine to enforce a foreign decree for alimony which was not enforceable under the full faith and credit clause. Moreover, such a result now seems mandated by the Revised Uniform Reciprocal Enforcement of Support Act. Virginia Code §§ 20-88.12, *et seq.* Under that Act any foreign "judgment, decree, or order of support . . . whether temporary or final, or subject to modification, revocation or remission . . .," Code § 20-88.13(14), upon registration in a court of this state "shall be treated in the same manner as a support order issued by a court of this State" and shall have "the same effect and . . . [be] subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner". Code § 20-88.30:6(a). Consistent with this language, we believe that the court below was under a duty to recognize and enforce the foreign alimony decree.

■In enforcing a foreign decree for alimony arrearages under

the comity doctrine, due process requires that a court consider any questions of modification raised by either party which could have been presented to the courts of the state where the decree was originally entered. *Griffin* v. *Griffin,* 327 U.S. 220, 233-34 (1946); *Worthley* v. *Worthley, supra* at 468-74, 283 P.2d at 22-25. The court below, in holding that Mrs. Alig was equitably estopped from recovering arrearages for the months of August, 1972 through April, 1975, in effect, ordered a retroactive modification of the Maryland decree. We believe, however, that the court's ruling on this point was erroneous.

In *Richardson* v. *Moore,* 217 Va. 422, 229 S.E.2d 864 (1976), the husband unilaterally reduced alimony payments to his wife in 1949. The wife voiced an initial objection to the reduction, but thereafter accepted the reduced payments without further complaint. Twenty-five years later the wife sued for arrearages. The trial court found that the wife's claim was "barred by laches or that she . . . [was] estopped from asserting a stale right by acquiescing in . . . [her husband's] noncompliance with the Court order". *Id.* at 423, 229 S.E.2d at 865. In overruling the trial court we held that a wife's passive acquiescence does not excuse a husband's noncompliance with a court's alimony decree. *Id.* at 423, 229 S.E.2d at 866.

Similarly, Mrs. Alig's failure to communicate with Alig for almost three years after his termination of the alimony payments did not justify Alig's noncompliance with the alimony decree. *See Newton* v. *Newton,* 202 Va. 515, 518, 118 S.E.2d 656, 658 (1961). Alig was under a clear duty to comply with the terms of the alimony decree until modified by a further court order, and he could not escape this duty merely by relying upon the erratic statements and actions of an emotionally unstable person.

■ As to the claim for interest, the general rule is that in the absence of factors making it inequitable, interest should be assessed on unpaid installments of alimony from the date they mature or become due until the date they are paid. *See* Annot., 33 A.L.R.2d 1455 (1954) and cases cited therein. We believe that in the present case the court erred in finding that it would be inequitable to allow Mrs. Alig to recover interest on past due alimony installments. Alig was unjustified in terminating the alimony payments, and his actions deprived Mrs. Alig of the use of these payments for a long period of time. Hence, we hold that the equities of the case are with Mrs. Alig and the general rule

allowing interest on unpaid installments will be followed. However, no interest will be assessed on the arrearages due for the months of January, 1976 through August, 1976, since Alig was acting pursuant to a court order in making payments of only $150 per month during that period of time.

For the same reasons noted above, we hold that Mrs. Alig is entitled to recover attorneys' fees. The allowance of attorneys' fees in a suit to establish and enforce a foreign decree of alimony has been previously approved by us in *McKeel, supra* at 116-17, 37 S.E.2d at 750-51. Mrs. Alig was forced to employ attorneys to establish and enforce her rights which were resisted by her former husband throughout this extensive litigation. Her legal expense is attributable to his recalcitrance.

Finally, we hold that the evidence is insufficient to show such a material change in the financial positions of the parties as to justify a modification of the monthly alimony payments. Accordingly, the decision of the chancellor that the monthly alimony payments should remain fixed at $300 is affirmed. Moreover, the finding of the trial court that Mrs. Alig is entitled to arrearages of $300 per month for the months of May, 1975 through December, 1975 and $150 per month for the months of January, 1976 through August, 1976 is also affirmed. The decree of the trial court will be reversed, however, insofar as it denies to Mrs. Alig alimony arrearages for the months of August, 1972 through April, 1975, interest on past due arrearages excluding those arrearages accruing from January 1, 1976 through August, 1976, and reasonable attorneys' fees, and the case will be remanded for the entry of a decree consistent with the views herein expressed.

*Affirmed in part;*
*reversed in part;*
*and remanded.*