606 P.2d 1002

**Faye Doman NOMER, Plaintiff-Appellant and Cross-Respondent,**

v.

**Richard Leroy KOSSMAN, Defendant-Respondent and Cross-Appellant.**

No. 13056.

Supreme Court of Idaho.

Feb. 25, 1980.

Charles H. Creason, of Creason & Creason, Rupert, for plaintiff-appellant and cross-respondent.

Robert M. Nielsen, of Ling & Nielsen, Rupert, for defendant-respondent and cross-appellant.

BISTLINE, Justice.

Plaintiff-appellant Faye Nomer, then Mrs. Kossman, obtained a default divorce decree against her husband, defendant-respondent Richard Kossman, on July 25, 1975 in Cassia County, Idaho. The decree granted Nomer custody of their three children and ordered Kossman to pay child support of $100 per month per child commencing August 1, 1975, said monies to be paid through the clerk of the Cassia County court. The decree further divided the property of the parties and ordered Kossman to pay all of the children's medical bills and all debts incurred by the community during the marriage. The court also awarded Kossman the right to visit his children at all reasonable times, places, and circumstances on reasonable notice to Nomer. Kossman ceased paying child support after April, 1976.

In July, 1976, Nomer took a copy of her decree to the Cassia County prosecutor, asking that office to enforce the child support provisions. Because she had moved to Minidoka County, the Cassia County prosecutor referred her to the Minidoka County prosecutor. The Minidoka County prosecutor then prepared a complaint and sent copies of it and the decree to the Mountain Home

prosecutor in Elmore County, where Kossman was living, for enforcement. The complaint was a printed form in use in Idaho in Uniform Reciprocal Enforcement of Support Act (URESA) actions. Paragraph 2 of that complaint erroneously stated that the divorce had been entered by the Minidoka County court. The Mountain Home prosecutor caused the Elmore County court to issue an order to show cause. On August 25, 1976, Kossman appeared before that court *pro se* while Nomer appeared through the prosecuting attorney. The court found that Kossman was the father, had a duty of support to the three children, and that he was in arrears in the sum of $1,200. The court ordered Kossman to pay off the arrearage at the rate of $25 per month, and to pay child support of $80 per child per month. All payments were to be made to the Elmore County district court clerk, who then would transmit them to the Minidoka County clerk. Three copies of this order were to be mailed to the Minidoka County court clerk; none were to be mailed to the clerk of Cassia County.

Nomer, who was to later assert that the foregoing turn of events upset her, did not appeal; Kossman was later found to have fully complied with that order. On July 13, 1977, Nomer and her husband filed a petition in bankruptcy not listing as assets or income either the additional amount of arrears she is now seeking nor the arrearages previously determined and ordered paid monthly. On March 3, 1978, Nomer, using the services of a private attorney, commenced a proceeding in the Cassia County divorce action (this case) seeking to collect $1,795 in arrears based on the original decree. Kossman, with counsel, moved to dismiss on the grounds (1) that he had fully complied with the 1976 Elmore County order and (2) that "plaintiff is in contempt of this Court and should not be granted equitable relief from the Court until such time as she has purged herself of contempt," it being alleged in his supporting affidavit that plaintiff had denied him reasonable visitation rights.

After a hearing, the trial court found (1) that there had been a material, permanent and substantial change in the circumstances and conditions of the parties since the entry of the original decree; (2) that the financial condition of Kossman had not changed since the 1976 proceeding and order in Elmore County; (3) that Kossman was paying more than 30% of his monthly income for child support; (4) that the 1976 order had not modified the original decree; and (5) that Nomer had unreasonably restricted Kossman's visitations. The court modified the original decree (1) by reducing the child support payments to $80 per month per child; (2) by specifying Kossman's visitation rights; and (3) by ordering the arrearage of $1,865 to be paid within 90 days.

In an opinion explaining its holding, the district court first noted the apparently irreconcilable differences between I.C. § 32–710A and the provisions of URESA (particularly I.C. § 7–1080). The court determined that the Elmore County proceeding had been brought under URESA because the complaint stated in paragraph four that the petitioner was entitled to support from respondent under the provisions of URESA and because the order of the court appeared to be an order in the form used under URESA. Kossman was held liable for the difference between the $100 per child originally ordered and the $80 per child he had been paying. The court based its calculation of the arrears then owing on this difference.

Nomer appeals, arguing that the reduction in child support payments was in denial of due process, and that there was insufficient evidence to support the finding of material, permanent and substantial change of circumstances. Kossman cross-appeals, claiming that the court erred in not accepting the 1976 Elmore County order as a valid modification of the original Cassia County decree.

The major issue before us is whether the trial court properly concluded that the Elmore County order did not modify the original decree. As noted by the trial court, we deal with two apparently irreconcilable statutes: I.C. § 32–710A and, in URESA,

§ 7–1080. I.C. § 32–710A provides for modification of an Idaho decree in a county of the state other than that in which the decree was obtained:

"All payments for child support ordered pursuant to any decree of divorce or separate maintenance shall be paid to the clerk of the district court which entered the decree requiring the same, unless otherwise ordered by said court, and said clerk shall keep a record of payments made under said decree and shall transmit said payments to the person or persons entitled thereto by virtue of said decree. Said clerk shall notify the prosecuting attorney of the county in which the decree is entered of any failure to comply with the terms of payment specified by any such decree, and said prosecuting attorney shall be responsible for enforcing said decree as follows:

"A. If the person required to pay resides in the county in which the decree was entered, the prosecuting attorney shall institute appropriate action to enforce the decree.

"B. If the person required to pay resides outside the state, the prosecuting attorney shall institute proceedings through the Uniform Reciprocal Enforcement of Support Act.

"C. *If the person required to pay resides in some other county in the state, the prosecuting attorney shall make such showing to the district court which entered the decree and upon order of the court shall forward two (2) certified copies of the decree with all modifications together with two (2) certified copies of the payment record to the clerk of the district court of the county in which the person required to pay resides.* Said clerk shall file and docket one (1) copy of the decree and payment record without fee and deliver the other copies to the prosecuting attorney of that county who shall institute appropriate action to enforce the decree.

"*Upon the filing and docketing of the certified copies of the decree and payment record, said decree shall be enforced, and may be modified as to the amount of payment required, by the district court in that county as if originally entered in that county.* The procedure for the enforcement or modification of said decree as to amount of payment shall be the same as in the case of a decree originally entered in that court, including the power to punish the person required to pay for contempt. Any payments made as a result of proceedings in that court shall be made through the clerk of that court and the clerk shall keep a record of such payments and shall transmit said payments to the person or persons entitled thereto by virtue of said decree.

"If the district court in a county other than the county in which the decree is entered modifies the decree as to the amount of payment required, the clerk of that court shall send a certified copy of the order modifying the decree to the clerk of the court in the county in which the decree was originally entered and the latter clerk shall file the same in the action in which the original decree was entered.

"If the person required to pay changes his residence from any county to which certified copies of the decree and payment record have been forwarded as herein provided, and the prosecuting attorney of that county discovers that the defendant resides in another county of this state, the prosecuting attorney shall make such showing to the district court and upon order of the court shall forward the entire file to the clerk of the district court of the county where the defendant resides, where the same proceedings shall be had for enforcement or modification as herein provided." (Emphasis added)

I.C. § 7–1080 makes URESA provisions applicable when both parties live in Idaho:

"This act applies if both the obligee and the obligor are in this state. If the court of the county in which the complaint is filed finds that the complaint sets forth facts from which it may be determined that the obligor owes a duty of support and finds that a court of an-

other county in this state may obtain jurisdiction over the obligor or his property, the clerk of the court shall send the complaint and a certification of the findings to the court of the county in which the obligor or his property is found. The clerk of the court of the county receiving these documents shall notify the prosecuting attorney of their receipt. The prosecuting attorney and the court in the county to which the copies are forwarded then shall have duties corresponding to those imposed upon them when acting for this state as a responding state and said duties shall also apply if both obligee and obligor reside in the same county in this state."

■ Although § 32–710A provides for modification of a decree as if originally entered in the modifying court, this is not true under URESA, I.C. § 7–1078 [1] specifically providing nothing regarding *modification*. It does deal with nullification, and as we read it, a support order made in an Idaho court in an URESA case does not nullify an existing support order which has been entered in this state. It may be nullified by a subsequent order entered in another Idaho court, if it is specifically so provided. We assume this to mean in a court which has acquired an in personam jurisdiction in a proceeding wherein child support is an issue. An example would be a divorce action following an URESA proceeding.

At oral argument both counsel agreed that a district court entering an original decree with a provision for child support retains jurisdiction over both parties, and, while anywhere in Idaho, a party required to pay child support *is* amenable to the coercive processes of the court. The jurisdiction of our district courts is statewide, and we share with counsel extreme bewilderment as to why these particular statutes

were enacted. If this case is an example of the confusion resulting therefrom, the judicial resources of the state have been needlessly imposed upon. This case, which comes to us from the district court in Cassia County, originated in that court and notwithstanding that court's continuing jurisdiction over the parties, has occupied the time of the prosecuting attorneys of Minidoka and Elmore counties, as well as the district court systems of those two counties, eventually finding its way back to Cassia County, albeit in a somewhat disheveled and confused state by reason of its wearisome and needless travel.

There is even reason to doubt that the district court in Elmore County had jurisdiction, an issue, however, which was not raised by the parties in their appearance in that court, and not raised when the parties found their way back to the court from which they should not have departed. For certain, the parties did appear in court in Elmore County, where raising no question, they submitted themselves and a copy of their Cassia County district court decree for such disposition as might take place. We agree with the reasoning of the district court: the 1976 proceeding in Elmore County was not brought under § 32–710A, under the plain provisions of which an order of the district court of Cassia County was required in order to authorize the prosecutor of Cassia County to transmit copies of the original Cassia County decree to any other county in Idaho. On the other hand the Minidoka County district court complaint was prepared on a form used in URESA actions, specifically stating that "[p]etitioner is entitled to support from the respondents under the provisions of the Uniform Reciprocal Enforcement of Support Act of this State . . . ." Under the URESA any order entered cannot modify the original order or decree directing child support.

---

1. "A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of

issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state."

■ Until the legislature perchance learns that district court jurisdiction extends into each and every county of the state, and accordingly undoes the hodge-podge it has created, problems like that seen here will be avoided if the district courts will decline to enter orders of which mention has been made, and if transferee counties will decline to accept copies of court decrees from other counties in the state where there has not been an appropriate authorization. Orderly administration and dwindling judicial resources mandate that other than in unusual circumstances, where the party required to pay support is found in Idaho, an appropriate proceeding be brought in the court which entered the original decree.

■ Defendant also argues that arrears should not be awarded to Nomer because she has violated the court's previous orders regarding visitation and because of laches. The trial court found that Nomer had without just cause unreasonably restricted Kossman's reasonable requests for visitation, but nonetheless awarded arrearages to Nomer. As Kossman notes, where the children no longer need the support payments, it is a matter of discretion with the trial court whether or not to withhold them in order to enforce visitation rights. *See Heidemann v. Heidemann*, 96 Idaho 602, 533 P.2d 96 (1974); *Kirkwood v. Kirkwood*, 83 Idaho 444, 363 P.2d 1016 (1961). Here plaintiff had just recently shown at the proceedings in Elmore County that the children, ages 13, 9, and 7, needed their father's support. There is no evidence to the contrary, and we find no abuse of discretion in the trial court's decision to award arrears to plaintiff. As to laches, under the facts presented here laches is not a defense to the obligation to pay arrears. *See Despain v. Despain*, 78 Idaho 185, 300 P.2d 500 (1956).

Nomer contends that there was insufficient evidence to support the modification which reduced the amount due her per child per month for child support. She contends that the modification violated her due process rights in that she was not put on notice that modification was an issue properly before the court. We are not persuaded.

■ The administration of justice ought not to require a spouse to pay more than he can afford to pay. When Nomer sought to enforce the original decree in 1976, the Elmore County court had to determine how much Kossman could and should pay in order to avoid being jailed for contempt. Although the order entered did not modify the original decree, it did authorize Kossman to pay less per month per child, and Nomer did not appeal the amount set.

In his affidavit in support of his motion to dismiss in 1978, defendant stated what had happened in the Elmore County proceedings, and his conclusion that such had amounted to a modification:

> "1. That at the hearing on August 25, 1976, at which defendant appeared and was not represented by counsel, the Court determined that defendant could not pay child support of more than $80.00 per month per child. That since that hearing, defendant's financial condition has not improved and defendant is required to 'juggle' his monthly obligations in order to meet his commitment pursuant to the order of the Court. That defendant is paying 30% of his monthly income for child support."

Kossman in his affidavit also requested a reaffirmance of the 1976 order. We are unable to see from this how Nomer can contend that she had no notice that modification was not properly before the court in Cassia County in 1978. In fact, the proceeding in 1978 was premised on her contention that there had been no modification in 1976; the question of modification was obviously at issue.

■ We also find that there was sufficient evidence at the 1978 hearing to support a modification. It is true, as Nomer argues, that the party seeking modification of an order for child support has the burden of showing material, permanent and substantial change in the circumstances of the parties. *E. g., McFarlin v. Crawford*, 97 Idaho 458, 546 P.2d 855 (1976); *McRoberts v. McRoberts*, 80 Idaho 511, 335 P.2d 342 (1959).

Here, however, the Elmore County court in 1976 had decided that Kossman could not pay more than $80 per child per month. Nomer did not appeal that order. The Cassia County court in 1978 relied on that 1976 finding by noting that the condition of the parties had not changed since 1976. That court thus held that Kossman should not be required to pay more than $80 per month per child.

The Elmore County district court is a court of record and of general jurisdiction. With due regard to judicial economy, since no appeal was taken from the 1976 order, we presume that the 1976 order was properly entered. We see no error in the Cassia County district court basing its modification on that 1976 order. Judgment affirmed.

No attorney's fees to either party; no costs awarded.

McFADDEN, J., and BEEBE, J., Pro Tem, concur.

DONALDSON, C. J., and BAKES, J., concur in result.