Cheryl BJUGAN, Appellant (Plaintiff),

v.

Richard C. BJUGAN, Appellee (Defendant).

No. 84–83.

Supreme Court of Wyoming.

Nov. 27, 1985.

Martin J. McClain, Cheyenne, for appellant.

Bert T. Ahlstrom, Jr., (argued), and Kay Snider Coffman, Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.*

This is an appeal from a judgment entered pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) modifying a child support order previously entered in another jurisdiction. We reverse.

Appellant raises the following issues: "1. Whether in an URESA action brought pursuant to § 20–4–101 et seq., W.S.1977, the responding court may modify a support order previously entered in another action or proceeding.
"2. If modification is permissible, whether the responding court complied with the dictates of procedural due process in ordering a modification of an Iowa support decree."

Appellee restates the issues as: "1. Whether in a URESA action brought pursuant to § 20–4–101 et seq., W.S.1977, the responding state can modify a support order previously entered in another jurisdiction.
2. Whether the district court had jurisdiction over the plaintiff to modify the decree."

Cheryl and Richard Bjugan were married in Rochester, Minnesota, in December 1966. They had four children. On January 12, 1982, after a separation of six months, Cheryl and Richard were divorced in Cerro Gordo County, Iowa. The ·divorce decree ordered Richard to pay $200 per month per child for child support. Richard subsequently moved to Cheyenne, Wyoming, and fell behind in his child support payments.

On May 20, 1983, the district court of Laramie County, Wyoming, received URESA papers from the Cerro Gordo County District Court. The papers contained a re-

---

* This case was originally assigned to Chief Justice Thomas on September 14, 1984 for the rendering of a proffered majority opinion. No such opinion being forthcoming, it was reassigned to Justice Cardine on July 30, 1985. Justice Cardine distributed a proffered opinion to the court on September 5, 1985.

quest for registration of the Iowa divorce decree and enforcement of the $800 per month child support obligation and alleged arrearages of $2,267.98. Pursuant to the request, the Iowa divorce decree was registered and an Order to Appear and Show Cause was served on Richard on June 8, 1983. A hearing was held before the Wyoming district court on June 22, 1983. On September 27, 1983, judgment was entered against Richard.

The court found that Richard had been delinquent in his child support payments in the amount of $2,267.98. However, the court also found that Richard was financially unable to pay child support of $800 per month as ordered by the Iowa court. The court, therefore, modified the Iowa court's judgment, ordering Richard to pay $100 per month toward the arrearage in addition to a monthly child support payment of $500. Upon payment in full of the arrearage, the monthly payments were to be increased to $600, still $200 less than that which was required by the Iowa divorce decree.

Meanwhile, back in Iowa, Cheryl had obtained judgment against Richard for $3,967.98, the amount of arrearage accumulated under the Iowa divorce decree. On November 17, 1983, Cheryl filed a foreign judgment action in Laramie County District Court seeking enforcement of the Iowa judgment. Garnishment proceedings began on January 10, 1984, and on January 16, 1984, Richard's wages were garnished. Richard filed a motion to dissolve the attachment and to stay the garnishment, stating that he was in full compliance with the Wyoming court's support order, that he had no notice of the Iowa proceedings, and that he was not served and did not appear in those proceedings.

On February 27, 1984, the trial court entered an Order and Decree of Modification (URESA), finding that it had modified the Iowa court's support determination in the URESA action in 1983; that Richard had no obligation to pay support or arrearages other than what had been ordered in that action; that Richard was, at the time

of filing the foreign judgment and garnishment, in full compliance with the Wyoming court's URESA order; that the appellant's actions in pursuing a foreign judgment after Wyoming had assumed jurisdiction pursuant to the URESA action were improper; and

"[t]hat the Judgment And Order of this Court * * * is supreme so long as the Defendant is within the jurisdiction of this Court and is in compliance therewith, and that any other ruling would defeat the purpose of the URESA statutes."

The court thus reaffirmed its prior URESA judgment, quashed the pending garnishment action and any further attempts to enforce the foreign judgment, and expressly held that "the Decree of the Iowa Court is modified, accordingly and as set forth herein."

Claiming that the Wyoming court lacked jurisdiction to modify the Iowa support decree, Cheryl Bjugan appealed. Her claim is based in part on § 20–4–130, W.S.1977, which provides:

"A responding court shall not stay the proceeding or refuse a hearing under this act [§§ 20–4–101 through 20–4–138] because of any pending or prior action or proceeding for divorce, separation, annulment, dissolution, habeas corpus, adoption or custody in this or any other state. The court shall hold a hearing and may issue a support order pendente lite. In aid thereof it may require the obligor to give a bond for the prompt prosecution of the pending proceeding. If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, *the court shall conform its support order to the amount allowed in the other action or proceeding.* Thereafter the court shall not stay enforcement of its support order because of the retention of jurisdiction for enforcement purposes by the court in the other action or proceeding." (Emphasis added.)

Section 20–4–130, seems to us to concern the effect of fairly contemporaneous pro-

ceedings in different states upon the URESA action in the responding state (Wyoming). Thus, it is provided that the URESA action shall not be stayed because of the other proceeding, that a support order may be entered pendente lite, and that if the other proceeding is concluded before the URESA action, the support award shall be conformed to the amount in the other proceeding. Where the proceedings are not contemporaneous and a period of time has passed between a support order and commencement of the URESA action sufficient that a change in circumstances might necessitate modification, it is only reasonable that there be provision therefor.

We have said many times that in determining the intent and purpose of a statute every clause must be given effect. *State ex rel. Albany County Weed and Pest Control District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154 (1979); *Basin Electric Power Coop. v. State Board of Control*, Wyo., 578 P.2d 557 (1978). Consideration by this court of a legislative enactment should not be confined to a narrow reading of one particular section. *State ex rel. Albany County Weed and Pest Control District v. Board of County Commissioners of Albany County*, supra. All portions of an act must be read in pari materia. *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551 (1982).

In light of these well established principles, appellant's argument cannot be sustained. It is based on a narrow reading of only one section of Wyoming's URESA and fails to consider other relevant provisions or the purpose of the act as a whole.

Among the provisions that must be considered is § 20-4-131, W.S.1977, which provides in part:

"A support order made by a court of this state pursuant to this act [§§ 20-4-101 to 20-4-138] does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other

law, regardless of priority of issuance, *unless otherwise specifically provided by the court.*" (Emphasis added.)

Jurisdictions having similar provisions have held that under this section a support order issued by a responding court under URESA will have no effect on a prior decree absent a specific provision. *Matter of Custody of Gulick*, Nev., 676 P.2d 801 (1984); *Nomer v. Kossman*, 100 Idaho 898, 606 P.2d 1002 (1980). We agree. However, the first order issued by the Wyoming court in this case provided

"[t]hat the Court shall not modify the Iowa Decree for support at this time, *other than as is set forth herein.*" (Emphasis added.)

■ This provision demonstrates clearly the court's intent to modify the Iowa decree to the extent provided. We find the language sufficient to meet the requirements of § 20-4-131.

Appellant's argument also ignores § 20-4-136(a), W.S.1977, which provides:

"Upon registration, the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a support order of this state and may be enforced and satisfied in like manner."

■ The action in this case was commenced in Wyoming as a URESA registration proceeding as authorized by § 20-4-134(a), W.S.1977. The statement signed by Cheryl Bjugan was entitled "Statement for Registration of Foreign Support Order." The letter from the Cerro Gordo County Attorney asked the Wyoming court to register the Iowa divorce decree. The documents sent complied with the requirements of § 20-4-135(a), W.S.1977. Therefore, pursuant to § 20-4-136(a), the Wyoming court was entitled to treat the Iowa decree as if it had been issued by a court of this state and to apply applicable Wyoming law in issuing a new order. The general rule in Wyoming is that a provision for

future support can be modified from time to time in light of changing circumstances. *Salmeri v. Salmeri,* Wyo., 554 P.2d 1244 (1976). Under § 20-4-136(a) and *Salmeri,* we hold that the Wyoming court could properly issue its order modifying the support provisions of the foreign order.

 Our holding is unaffected by subsections (b) and (c) of § 20-4-136 which provide:

"(b) The obligor has twenty (20) days after the mailing of notice of the registration in which to petition the court to vacate the registration or for other relief. If he does not so petition the registered support order is confirmed.

"(c) At the hearing to enforce the registered support order the obligor may present only matters that would be available to him as defenses in an action to enforce a foreign money judgment. If the obligor shows to the court that an appeal from the order is pending or will be taken or that a stay of execution has been granted the court shall stay enforcement of the order until the appeal is concluded, the time for appeal has expired, or the order is vacated, upon satisfactory proof that the obligor has furnished security for payment of the support ordered as required by the rendering state. If the obligor shows to the court any ground upon which enforcement of a support order of this state may be stayed, the court shall stay enforcement of the order for an appropriate period if the obligor furnishes the same security for payment of the support ordered that is required for a support order of this state."

Although these subsections could be construed to mean that the obligor must file a special petition within the time specified or forever lose his opportunity to seek modification, we cannot accept that construction. That modification is one form of relief which may be sought by petition under subsection (b) does not mean that modification may not be sought by other means at a later date. As demonstrated above, subsection (a) clearly and expressly provides

that a registered foreign support order is to be treated in the same manner as a support order issued by a Wyoming court. Support orders issued in Wyoming are subject to modification, *Salmeri v. Salmeri,* supra; a priori foreign support orders registered in Wyoming are subject to modification.

In reaching this result, we are not alone. In *Monson v. Monson,* 85 Wis.2d 794, 271 N.W.2d 137 (1978), as in this case, the obligor did not petition the court within twenty days. Nevertheless, under a provision identical to § 20-4-136, the court held that an obligor may request modification of a support order at any time after it has been registered and that it is immaterial that the request for modification is not made within twenty days. Id. at 138.

Other courts have said that in enforcing a foreign support order:

"[D]ue process requires that a court consider any questions of modification raised by either party which could have been presented to the courts of the state where the decree was originally entered." *Alig v. Alig,* 220 Va. 80, 255 S.E.2d 494, 497 (1979).

For these reasons, we will not hold that the failure to petition for modification within twenty days forecloses the obligor from seeking modification.

We are left with the task of reconciling the conflicting provisions of Wyoming's URESA. On the one hand, as illustrated above, §§ 20-4-131 and 20-4-136 provide for circumstances under which prior foreign decrees may be modified by a Wyoming court. On the other hand, § 20-4-130, the provision upon which appellant relies, seems to provide, and some states have so held, that the responding court must conform its order to the amount allowed in any prior or pending action.

We have said that, when statutory language is unclear or ambiguous,

"the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contem-

poraneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent." *State ex rel. Motor Vehicle Division v. Holtz*, Wyo., 674 P.2d 732, 736 (1983).

The purpose of the Wyoming URESA is "to improve and extend by reciprocal legislation the enforcement of duties of support." Section 20-4-101, W.S.1977. The mischief the Act was intended to cure was the nonpayment of child support. More specifically, the URESA was intended to provide an inexpensive, simplified and effective means of enforcing the duty of support owed by the obligor in one state to the obligee in another state. *Clarkston v. Bridge*, 273 Or. 68, 539 P.2d 1094, 81 A.L.R.3d 1166 (1975). It is well recognized that the function of the responding court is not only to determine whether a duty of support exists, but to establish an effective means of enforcing that duty. *Vigil v. Vigil*, 30 Colo.App. 452, 494 P.2d 609 (1972); *State ex rel. Dewyea v. Knapp*, Mont., 674 P.2d 1104 (1984). The power to enforce a child support order necessarily includes the power to modify the order. *In re Marriage of Straeck*, 156 Cal.App.3d 617, 203 Cal.Rptr. 69, 71 (1984). It would be inconsistent to give a responding court the authority to enforce support duties while denying it the authority to enter a reasonable and effective order capable of enforcement. In many instances, an ex-spouse's failure to pay is due to his or her inability to pay. Modification of the original decree may under these circumstances constitute the only realistic means of obtaining compliance. If the obligor simply cannot pay the sum originally ordered, little is accomplished by demanding immediate payment of the full amount. Modification provides some assurance that the obligee will receive something as opposed to nothing. As we have noted, the amount of support to be given in the future must be subject to modification in light of changing circumstances. *Salmeri v. Salmeri*, supra. For these reasons, we hold that the URESA confers authority on a responding court to modify a foreign support order.

As further support for our holding, we note § 20-4-137, W.S.1977, which provides:
"This act [§§ 20-4-101 to 20-4-138] shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

A review of cases from other jurisdictions demonstrates that our holding is consistent with the majority view. Annot., 31 A.L.R.4th 347 (1984). To hold that modification is not permissible under our URESA would, therefore, defy the legislative directive contained in § 20-4-137. That provision requires this court to construe our URESA in a manner that is consistent with the construction given it by other courts. It is our duty to seek uniformity in the application of the URESA.

The Act is not a model of statutory draftsmanship. Its provisions are unclear and conflicting and are, therefore, susceptible to differing interpretations. Complete uniformity may not be possible. However, keeping in mind the directive of § 20-4-137 and having reviewed the history and purpose of the URESA, the intent of the legislature and the language of the Act itself, we find that the trial court had jurisdiction to modify the foreign support order. Having authority to modify does not mean that the court will modify. It may enforce the Iowa decree as originally entered if dictated by the circumstances, or some sympathetic judge may modify so that the burden of required payments are realistically attainable and the wife will receive something rather than nothing.

We turn now to the question of whether the trial court's authority to modify extends only to future support payments or to past-due payments as well. It is true that once arrearages become vested with the attributes of a judgment, they cannot be modified. *Salmeri v. Salmeri*, supra. However, until they are established by a formal order or decree of the court as past due and owing, a final judgment does not exist and such payments may be modified in the same manner as future support payments.

While often cited for the proposition that arrearages cannot be modified, *Salmeri v. Salmeri*, supra, is distinguishable. *Salmeri* involved two separate foreign judgments. The first was a judgment nisi issued by the New Jersey court dissolving the marriage of the parties and ordering payment of support. We found that judgment subject to modification by the Wyoming court. The second was a final judgment of the New Jersey court declaring a definite and fixed sum of money due and owing for past-due payments under the original judgment. We found that the second judgment had the same force and effect as any other money judgment, that it constituted a lien upon the property of the defendant permitting execution and that it was not subject to the discretion of the court. We said that where a court has issued a final judgment that payments are past due and owing, the judgment may not be modified to allow payment over a period of time or be subjected to qualifications that do not pertain to other types of final money judgments. We noted further that statutes authorizing the court to alter a support decree should not be construed as permitting judicial interference with or modification of what has become a final money judgment. Finally, we noted that the fact that a final judgment for a fixed sum of money grows out of a divorce action does not authorize the courts to extend the time for payment or otherwise modify payments.

■ In the present case, we are asked to determine only whether the trial court had jurisdiction to modify the order of support contained in the original divorce decree. There was no subsequent judgment by the Iowa court declaring support payments past due and owing. Therefore, under *Salmeri v. Salmeri*, supra, there was no final money judgment, and the Wyoming court had jurisdiction to modify payment of the arrearages.

■ Having concluded that the URESA confers authority upon a responding court to modify a prior decree, we must consider whether in this case the court's order did in fact modify the Iowa decree. Appellee contends the Wyoming court's order did not constitute a modification; that by using the Iowa decree to determine the amount of arrearage, the judge in fact conformed his order to the original decree. We find appellee's argument unpersuasive. To say that the order changed the amount to be paid each month but did not modify the original decree is nonsensical. Modification means to change, enlarge, or reduce; to modify is to change or alter in a quantitative sense. Black's Law Dictionary (5th ed. 1979). We simply cannot accept the argument that an order reducing monthly payments from $800 to $600 and providing for payment of arrearages in monthly installments is not a modification. In our view any change in the amount, manner or method of payment constitutes a modification. If an order does not conform to the original decree, it is a modification.

■ While holding that the trial court had jurisdiction to modify the foreign support order under the URESA, we cannot uphold the modification under the circumstances presented here. The Fourteenth Amendment to the United States Constitution prohibits any taking of property without due process of law. Notice and an opportunity to defend are unquestionably incident to due process. *Tanner v. Tanner*, Wyo., 482 P.2d 443 (1971). In proceedings for modification of a divorce decree the general rule is that an opportunity to be heard is required. *Tanner v. Tanner*, supra. Other courts have extended application of that rule to URESA cases and have held that unless the URESA petitioner has prior notice of a modification proceeding and an opportunity to protect his or her interests therein, the order cannot be modified. *Rondy v. Rondy*, 13 Ohio App.3d 19, 468 N.E.2d 81 (1983).

In the present case, appellant brought a URESA action for the single purpose of obtaining payment of past due support. When the hearing began she did not know that the court would go beyond enforcement of the Iowa judgment and undertake modification of it. She received no notice

that a modification was contemplated. There was no petition to modify and there were no pleadings. Appellant had no way of knowing that her right to support in the future would be modified at the hearing. The prosecuting attorney appeared on her behalf solely to determine if the proper defendant was before the court and to seek enforcement of past due support payments. Under these circumstances, the trial court's modification cannot be upheld. Where the responding court on its own initiative or upon motion of a party determines that modification is proper, notice and an opportunity to present evidence must be given to the obligee.

For the reasons stated, we hold that although a responding court has the authority under the URESA to modify a prior support order, the modification in this case violated appellant's due process rights and, therefore, cannot be upheld.

Reversed and remanded for future proceedings consistent with this opinion.

THOMAS, C.J., filed a specially concurring opinion.

BROWN, J., filed an opinion concurring in part and dissenting in part, in which ROONEY, J., joined.

THOMAS, Chief Justice, specially concurring.

I concur in the result which is reached by the majority opinion in this case. I am not, however, satisfied that this is the case in which to treat with the problem of whether child support obligations which have not been paid are subject to modification as are future child support payments. Because we hold that the modification was not accomplished by the trial court in this case on the ground that no notice was furnished to the obligee, I am convinced we should await a case in which we find that a modification was accomplished by a district court order before we treat with the propriety of modifying child support payments that are in arrears.

I would construe the provisions of § 20-4-136, W.S.1977, in a different fashion than

does the majority of the court. I would hold that the thrust of these statutory provisions is to give to the original Iowa decree, registered and confirmed as a foreign support order, substantially the same effect that this court afforded the New Jersey judgment for a fixed sum of money in *Salmeri v. Salmeri*, Wyo., 554 P.2d 1244 (1976). The statutory language of § 20-4-136(c), W.S.1977, is: "At the hearing to enforce the registered support order the obligor may present only matters that would be available to him as defenses in an action to enforce a foreign money judgment." In *Salmeri v. Salmeri*, supra, at 554 P.2d 1248, this court said:

"If, then, we are to give full faith and credit to that judgment we must hold that it is not subject to attack in this state except on grounds that would permit attack upon *any other money judgment*, such as want of jurisdiction in the court entering the judgment or lack of service so as to vest jurisdiction over the defendant." (Emphasis added.)

The effect of both our statute and our precedent is to foreclose the modification of the unpaid child support obligation in an instance such as this.

Lastly, it seems to me that we need to further consider the effect of the filing of the later Iowa judgment which reduced the arrearage of child support payments to a money judgment of $3,967.98. We, in effect, have set aside the judgment of the District Court of the First Judicial District which purported to modify the Iowa support decree, and upon which the district judge relied in concluding that the filing of the foreign money judgment was of no efficacy because it was contrary to his order. Since the modification order has been set aside, it would be my judgment that now the Iowa judgment for $3,967.98 must be recognized in Wyoming, in accordance with *Salmeri v. Salmeri*, supra, and that the holding of that precedent is sound to the effect that whatever it may do with respect to future child support the Wyoming court is without authority after this

reversal to modify that Iowa money judgment.

BROWN, J., concurring in part and dissenting in part, in which ROONEY, J., joins.

I agree with the result reached by the majority opinion for the reasons stated. But I cannot agree with the rule of law set forth in the majority opinion which states:

" * * * [U]ntil they [arrearages] are established by a formal order or decree of the court as past due and owing, a final judgment does not exist and such payments may be modified in the same manner as future support payments."

Such a rule encourages a person to default in his support payments whilst avoiding process of the court that originally ordered support. He later surfaces at a fortuitous time in a more favorable jurisdiction, with a large arrearage, and may be able to convince a sympathetic judge to forgive his dereliction. In *Salmeri v. Salmeri*, Wyo., 554 P.2d 1244 (1976), we held that a judgment for arrearages was not subject to modification, and a divorce decree could only be modified as to future alimony and support payments.

The majority's distinction that an obligation to pay arrearages must be reduced to a formal judgment before a court lacks authority to modify it seems untenable. The proposition remains that one seeking exoneration from arrearages in support payments may find a sympathetic judge elsewhere who is willing to grant him absolution from his sins.