888 P.2d 237

In re the Marriage of Carol WHITE–
NATHAN, Petitioner–Appellee,

v.

Frederick Reid NATHAN, Respondent–
Appellant.

No. 1 CA–CV 93–0046.

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 27, 1994.

MacLean & Jacques, Ltd. by Cary T. Inabinet, Phoenix, for appellant.

S. Alan Cook, P.C. by S. Alan Cook, Phoenix, for appellee.

## OPINION

WEISBERG, Judge.

Frederick Reid Nathan ("Nathan") appeals from the trial court's judgment on the grounds that it fails to give full faith and credit to a California Revised Uniform Reciprocal Enforcement of Support Act ("RURESA") order. We affirm.

## FACTS AND PROCEDURAL HISTORY

Pursuant to a 1989 Arizona decree of dissolution, Carol White–Nathan ("White") was awarded custody of the couple's son, and Nathan was ordered to pay $2,200 per month child support from August 1989 through May 1994, then $1,500 per month commencing in June 1994, until their child became eighteen or was sooner emancipated. In June 1989, Nathan moved to California. In March 1990, White and the child moved to Massachusetts.

In 1991, White petitioned for assistance in recovering child support under Massachusetts' version of the Uniform Reciprocal Enforcement of Support Act,[1] and the petition was forwarded to California.

In January 1992, the District Attorney for the County of Los Angeles filed a citation on White's behalf requiring Nathan to appear in the California Superior Court and show cause why he should not be directed to pay child support in a sum to be determined by the court. On March 30, 1992, the California Superior Court issued a minute entry finding that Nathan owed a duty of support to his son. Pursuant to California's version of RURESA, the court ordered Nathan pay child support in the amount of $1,000 per month through the Office of the Los Angeles County Court Trustee commencing April 15,

---

1. Massachusetts has not adopted the *Revised* Uniform Reciprocal Enforcement of Support Act.

1992, plus an additional $400 per month to be applied against an $18,200 child support arrearage. The court used a multipurpose order form that contained the language "the order of _____ is modified in the following respects," but the court did not fill in the blank or mark the box that would have indicated it was selecting that provision.

On May 14, 1992, in Arizona, Nathan filed a request to modify the Arizona child support order. Among other things, he requested that the Arizona court give full faith and credit to the California RURESA order. In response, White petitioned for a contempt order against Nathan for his failure to pay child support, and for other appropriate relief. After an evidentiary hearing, the trial court declined to give full faith and credit to the California RURESA order, holding that it did not modify the Arizona support order and, further, did not limit the Arizona court's jurisdiction to enforce its own order. The trial court also denied Nathan's request to modify the child support order; granted judgment to White for arrearages in the amount of $47,947, together with interest accrued thereon; found Nathan to be in contempt of court; and directed that a wage assignment issue in the monthly amount of $2,700, which included $500 per month toward the arrearages. Nathan filed a timely notice of appeal. We have appellate jurisdiction pursuant to Ariz.Rev.Stat.Ann. (A.R.S.) section 12–2101(E).

## ANALYSIS

Nathan's sole argument is that the trial court erred in failing to give full faith and credit to the California RURESA order.[2] He argues that our supreme court in *Ibach v. Ibach*, 123 Ariz. 507, 600 P.2d 1370 (1979), held that RURESA conferred jurisdiction on sister state courts to modify support provisions in Arizona marital dissolution decrees, and that such modifications are entitled to full faith and credit in Arizona. While we agree with Nathan's characterization of *Ibach*, we disagree with his proposed application.

## I. RURESA

In 1970, the Arizona Legislature enacted a version of RURESA as A.R.S. sections 12–1651 through 1691. 1970 Ariz.Sess.Laws Ch. 90, § 3. RURESA has been adopted in thirty-one other states, including California. *See* 4(A) A.R.S. at 387.

### A. Initiating RURESA Proceedings

Under RURESA, either an individual obligee of a duty of support, or the state or political subdivision that furnishes support to such an obligee, may file a complaint seeking a support order in the appropriate court of the state in which the obligee resides. RURESA §§ 2, 8–13; 9(B) UNIFORM LAWS ANNOTATED at 402–457 (1987). If the court in which the complaint is filed (the "initiating" court) finds that the complaint sets forth facts from which it may be determined that the obligor owes a duty of support and that a court in the state of the obligor's residence (the "responding" court) may obtain jurisdiction of the obligor or his property, the initiating court must so certify and forward the certification and three copies of the complaint to either the responding court or the designated "information agency" of the responding state for prosecution of the claim. RURESA §§ 14, 17–23.

If the responding court finds a duty of support, it may order the obligor to furnish present support and/or to reimburse for unpaid past support, and may subject the property of the obligor to the support order. RURESA § 24. The responding court then must transmit to the initiating court any payments made by the obligor. RURESA § 28. The initiating court receives such payments and disburses them to the obligee. RURESA § 29.

As an alternative to the foregoing procedure, RURESA sections 35 through 40 (A.R.S. sections 12–1684 through 12–1689 and Calif.Fam.Code sections 4844 through 4849) permit an obligee to register a foreign support order with the responding court. Within twenty days of service, the obligor may ask the responding court to vacate the

---

**2.** United States Constitution Art. IV, Sec. 1 provides in part: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

registration. If the obligor does not do so, the registered support order is confirmed and becomes enforceable in the responding state. RURESA section 40(a) provides:

> Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner.

*See* A.R.S. § 12–1689(A); Calif.Fam.Code § 4849.

### B. Modifying Prior Support Orders

█ The standard RURESA action is an independent proceeding to determine and then enforce a duty of support. *Wornkey v. Wornkey,* 12 Kan.App.2d 506, 749 P.2d 1045, 1048 (1988). Its purpose is to provide an additional and separate means for obligees to enforce child support obligations. *In re Marriage of Gifford,* 122 Ill.2d 34, 118 Ill. Dec. 452, 453–454, 521 N.E.2d 929, 930–931 (1988). The vast majority of courts hold that, in a RURESA action to enforce the support provisions of a decree issued by a court of another state, the responding court may enter its own support order prospectively raising or lowering the amount of the support obligation, if the circumstances before it warrant such a change. *Thompson v. Thompson,* 366 N.W.2d 845, 847 (S.D.1985).

█ RURESA section 30 provides that, under certain circumstances, the responding court must conform its support order to the amount allowed in another state's proceeding. This section has been held to apply only when the proceeding that generated the original support order and the RURESA action are contemporaneous, or nearly so, and the RURESA complaint makes a demand for the support awarded in the prior proceeding.

*Wornkey,* 749 P.2d at 1048–49; *Bjugan v. Bjugan,* 710 P.2d 213, 216 (Wyo.1985). When the proceedings are not contemporaneous and a period of time has passed between entry of the original support order and the commencement of the RURESA action, the responding court need not conform its RURESA order to the original support order. *Bjugan,* 710 P.2d at 216.

█ In an action in which RURESA section 30 does not apply, the responding court may require the RURESA respondent pay a greater or lesser amount of child support than that imposed by the underlying dissolution decree or support order. *Hodgins v. Hodgins,* 814 S.W.2d 710, 711 (Mo.App.1991); *Thompson,* 366 N.W.2d at 847. However, RURESA section 31 provides:

> A support order made by a court of this state pursuant to this act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by a court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by a court of this state.

*See* former Calif.Civil Proc.Code § 1689, now Calif.Fam.Code § 4840.[3] Thus, unless the responding court specifies otherwise, the RURESA support order does not supersede the underlying support order. Accordingly, a variation between the support amount provided in the RURESA order and that in the underlying support order does not in itself alter or modify the underlying support order. *See e.g., McConnell v. Attorney General of Texas,* 878 S.W.2d 281 (Tex.App.1994); *In re Marriage of Kramer,* 253 Ill.App.3d 923, 192

---

3. As amended by 1979 Ariz.Sess.Laws Ch. 99, section 2, Arizona's version of RURESA section 31, A.R.S. section 12–1680, deletes the clause "unless otherwise specifically provided by the court" at the end of the first sentence. *See Crow v. State Dept. of Social Services,* 242 Neb. 54, 493 N.W.2d 169 (1992) (noting that this amendment to Arizona's version of RURESA section 31 pre-vented Arizona courts acting as responding courts in RURESA actions from modifying foreign states' original support orders). Only the text of the California version of RURESA section 31, however, which was not similarly amended, is pertinent to resolving the appeal in this litigation because the responding state is California.

Ill.Dec. 653, 625 N.E.2d 808 (1993); *Rimsans v. Rimsans*, 261 N.J.Super. 214, 618 A.2d 854 (App.Div.1992); *State v. Borchers*, 805 S.W.2d 880 (Tex.App.1991); *Bjugan*, 710 P.2d at 216; *Matter of Custody of Gulick*, 100 Nev. 125, 676 P.2d 801 (1984); *Nomer v. Kossman*, 100 Idaho 898, 606 P.2d 1002 (1980); *In re Marriage of Gifford*, 118 Ill. Dec. at 454, 521 N.E.2d at 931; *Hodgins*, 814 S.W.2d at 711; *Thompson*, 366 N.W.2d at 847–48; *In re Marriage of Straeck*, 156 Cal. App.3d 617, 203 Cal.Rptr. 69 (1984); *State v. McKenna*, 253 Ga. 6, 315 S.E.2d 885 (1984); *Campbell v. Jenne*, 172 Mont. 219, 563 P.2d 574 (1977); *Lanum v. Lanum*, 92 A.D.2d 912, 460 N.Y.S.2d 344 (1983). *See generally* Andrea G. Nadel, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify Any Other Order*, 31 A.L.R.4th 347 (1984).

■ Consistent with this interpretation, an obligor under original and RURESA support orders receives credit under both orders for amounts paid under either. RURESA section 31, therefore, necessarily contemplates that two or more dissimilar support orders may be outstanding and valid at the same time. *Hodgins*, 814 S.W.2d at 711; *Thompson*, 366 N.W.2d at 848; *State v. Borchers*, 805 S.W.2d at 881–82; *McEvily v. McEvily*, 140 Vt. 279, 437 A.2d 1110 (1981). As the court stated in *In re the Marriage of Straeck*:

> While under this rule an obligor could be subject to dual enforcement actions and multiple inconsistent orders for child support, an obligor is not without a remedy under such circumstances. Section 1689 (RURESA Section 31), quoted in part above, provides that other support orders do not nullify and are not nullified by a RURESA order '… unless otherwise specifically provided by the court….' Therefore, the obligor could request that the court specifically provide that the new order supersedes or modifies all other orders….

203 Cal.Rptr. at 73.

■ Accordingly, RURESA provides two procedures under which a responding court may modify the underlying support order. The first is when the obligee registers the original support order in the responding state pursuant to RURESA sections 35 through 40. As discussed above, once the registration is confirmed, the order is treated as if it were a support order of the state in which it is registered. *See State on Behalf of McDonnell v. McCutcheon*, 337 N.W.2d 645, 651 (Minn.1983). As such, it is subject to the same procedures for reopening and modification. *See* RURESA § 40.

The second is when the obligor affirmatively requests the responding court, under RURESA section 31, to expressly provide that its RURESA order "nullify" or modify the prior support order. *In re Marriage of Popenhager*, 99 Cal.App.3d 514, 160 Cal. Rptr. 379, 383 (1979); *Trippe v. Trippe*, 53 Cal.App.3d 982, 126 Cal.Rptr. 214, 216 (1975); *State ex rel. Louisiana v. Phillips*, 40 Or. App. 547, 595 P.2d 1276, 1277 (1979). As the California Court of Appeals stated in *In re Marriage of Popenhager*:

> The effect of the 1970 amendment [adoption of RURESA section 31] was to give the power to modify when specifically exercised. The specificity now required for modification … recognizes that a reciprocal case is a two-state matter with no appearance by the obligee. Thus, the responding court may frequently lack information as to the obligee's testimony or evidence as to the obligor's ability to pay.
>
> Thus, pursuant to the current version of Code of Civil Procedure section 1689, a reciprocal support order, in and of itself, still does not supersede a prior support order. However, a reciprocal order can supersede and effectively modify a prior support order if the responding court specifically so provides in its order …

160 Cal.Rptr. at 384. When the responding court does not specifically so provide, however, the RURESA support order does not nullify or supersede the original support order, and arrearages will continue to accumulate under that order. *Wornkey*, 749 P.2d at 1049; *Gulick*, 676 P.2d at 803–804; *Kammersell v. Kammersell*, 792 P.2d 496, 498–99 (Utah App.1990); *Miskimon v. Miskimon*, 173 Mich.App. 393, 433 N.W.2d 419, 421–22 (1988).

## II. DID THE CALIFORNIA COURT MODIFY NATHAN'S OBLIGATIONS UNDER THE ARIZONA DISSOLUTION DECREE?

■ In the instant case, White did not register the original Arizona dissolution decree in California pursuant to RURESA sections 35 through 40. Consequently, the first method of modification does not apply.

Next, the California RURESA record reflects that Nathan failed to request a modification of the Arizona dissolution decree. Therefore, although the California court's RURESA support order contained a form provision for the modification of a prior support order, the judge did not mark it. *See Popenhager,* 160 Cal.Rptr. at 383. Thus, pursuant to former Calif.Civil Proc.Code section 1689 (California's adoption of RURESA section 31), the California court's RURESA order did not, as a matter of California law, modify the Arizona dissolution decree. The Full Faith and Credit Clause of the United States Constitution, therefore, does not require that Arizona modify its original decree.

Nathan, however, argues that *Ibach* requires that the California RURESA order be treated as having modified the original Arizona dissolution decree. In *Ibach,* the parties' Arizona dissolution decree ordered the ex-husband to pay his ex-wife $250 per month spousal maintenance. Subsequently, the ex-husband, while living in Colorado, began paying only $75.00 per month. After the ex-wife initiated a RURESA support action in Arizona, which was served upon the ex-husband in Colorado, he filed a separate motion asking the Colorado court to abate or reduce his existing support obligation.

Following a hearing, the Colorado District Court found that "the fair and reasonable amount of support ordered by this court will be in the amount of $75 a month." 123 Ariz. at 508, 600 P.2d at 1371. The ex-wife did not appeal. Unfortunately, the Colorado court neglected to sign a formal order. Three years later, the ex-husband began to pay only $40 per month, and the ex-wife repeated the RURESA procedure. The Colorado court then found the ex-husband to be in arrears in the amount of $220, ordered that he pay an additional $25 per month until the arrearage was extinguished, and further ordered that the obligation of support be terminated twelve months thereafter. Having discovered its failure to sign a formal order in the original Colorado proceeding, the trial court then entered a *nunc pro tunc* order modifying the Arizona support order.

In Arizona, the ex-wife subsequently sought to recover the husband's arrearages calculated under the original Arizona dissolution decree. The trial court, however, held that the Colorado court's initial RURESA order had effectively modified the Arizona dissolution decree to reduce spousal maintenance payments to $75 per month, and entered a judgment for arrearages based on that calculation.

The ex-wife appealed the Arizona judgment, arguing that RURESA did not confer jurisdiction upon the Colorado court to modify the support provisions of the original Arizona dissolution decree. Our supreme court disagreed. It relied on the version of RURESA section 31 that was in effect in both Arizona and Colorado at the time, which provided that support orders entered by a responding state may nullify previous support orders from other states if the court of the responding state specifically so provides. The court found that, pursuant to section 31, the Colorado court had the power to modify Arizona's dissolution decree. It further found that the Colorado court had, in fact, modified the Arizona decree.

The Arizona Supreme Court noted several factors that influenced its conclusion. First, the issue whether to modify the original order was directly before the Colorado court because of the husband's motion to abate or reduce support. Second, the Colorado court heard testimony from both parties regarding their present circumstances. Moreover, the ex-wife complied with the Colorado modification by not contesting the reduced payments for three and one-half years, until the ex-husband further reduced his payments. Finally, the Colorado court entered a *nunc pro tunc* order that specifically modified the Arizona order.

Notwithstanding, we conclude that *Ibach* is distinguishable from the present case on sev-

eral grounds. First, the Colorado court entered a formal, albeit *nunc pro tunc,* order specifically modifying the underlying support order. In the instant case, the California court did not specifically modify the Arizona dissolution decree, choosing instead to leave blank the box which would have indicated that the underlying support order was to be modified. The only implication to be drawn from this omission is that the court did not intend to modify the Arizona dissolution decree.

Second, in *Ibach* the ex-husband had filed a motion in the Colorado District Court specifically asking it to abate or reduce support. Here, however, the record contains nothing indicating that Nathan specifically asked the California court to reduce his existing child support obligation. Third, the ex-wife in *Ibach* personally appeared and testified before the Colorado court, while the California court in this case did not have the personal testimony of White upon which to base a more comprehensive order.

Finally, our supreme court in *Ibach* noted that the ex-wife's non-action over three years effectively recognized that the Colorado court's original order had modified the Arizona support decree. In contrast, White's actions do not similarly imply that she had treated the California order as modifying the Arizona support order.[4] We therefore conclude that *Ibach* is not controlling in this case, and that the trial court did not improperly deny full faith and credit to the California support order.

### III. ATTORNEY'S FEES

■  White has requested an award of attorney's fees and costs on this appeal pursu-

ant to Rule 21, Arizona Rules of Civil Appellate Procedure and A.R.S. section 25–324. A.R.S. section 25–324 permits this court to award to either party the attorney's fees and costs incurred in maintaining or defending the proceeding, after considering the parties' relative financial resources. The intent of the statute is to award fees and costs to the party least able to pay. *Gore v. Gore,* 169 Ariz. 593, 596, 821 P.2d 254, 257 (App.1991).

■  The record indicates that Nathan either earns or has the ability to earn substantial income. Meanwhile, the record indicates that White is practically destitute. Therefore, in exercise of our discretion, we award White her reasonable attorney's fees and costs incurred on this appeal. She is directed to file in this Court a statement of attorney's fees and costs, pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

### CONCLUSION

Because the California RURESA support order did not modify the underlying Arizona dissolution decree, the trial court did not err in failing to accord it full faith and credit. Accordingly, the trial court's judgment is affirmed.

EHRLICH, P.J., and VOSS, J., concur.

---

4.  Cf. *Gifford,* 152 Ill.App.3d 422, 105 Ill.Dec. 527, 504 N.E.2d 812 (1987), *aff'd in part, rev'd in part,* 122 Ill.2d 34, 118 Ill.Dec. 452, 521 N.E.2d 929 (1988) (distinguishing *Ibach* on its facts).