Linda J. Hall TANBAL *v.* Larry E. HALL

94-138                                             878 S.W.2d 724

Supreme Court of Arkansas
Opinion delivered July 5, 1994

*L. Ashley Higgins, P.A.*, by: *L. Ashley Higgins*, for appellant.

*Simes & Simes*, by: *L.T. Simes, II*, for appellee.

ROBERT L. BROWN, Justice. This appeal concerns the Uniform Reciprocal Enforcement Support Act (Ark. Code Ann. § 9-14-301, *et seq.* (1987))[1] and the authority of the Phillips County Chancery Court to nullify the original support order of another state, in this case Arizona, without specifically providing that the Arizona decree was nullified. The issue came before the chancery court in the form of a petition to enforce arrearages as found by the Arizona court in 1990 against the appellee, Larry E. Hall. The Arkansas chancery court denied the petition on the basis that it had entered its own judgment for an arrearage amount in 1989 which decided the issue. We conclude that there was no specific nullification of the Arizona decree by the Arkansas chancery court at any juncture, and we reverse and remand to the chancery court for further proceedings consistent with this opinion.

Appellant Linda J. Hall Tanbal married appellee Larry E. Hall in 1968 in Tucson, Arizona. During the marriage, twin children were born. Less than four years later in 1971, the couple divorced. At the time of the divorce, the children were approximately eight months old. Under the decree, Linda Tanbal was granted custody of the two children, and Larry Hall was required to make child support payments of $225.00 per month.

Following the divorce, Hall moved to Phillips County, and these orders were entered by the Arkansas chancery court:

(a) On December 11, 1981, an order was entered, finding that Hall was $2,925.00 in arrears in child support and ordering him to continue child support payments of $225 per month.

(b) On December 17, 1982, an order was entered, finding that Hall was $5,625.00 in arrears in child support. Support was set at $18.00 per week per child and $5.00 per child for the arrearage.

---

[1] This Act was repealed by Act 468 of 1993 entitled the Uniform Interstate Family Support Act, now codified at Ark. Code Ann. § 9-17-101, *et seq.* (Repl. 1993), and effective March 12, 1993.

(c) On January 13, 1984, an order was entered reducing Hall's child support payments to $9.00 per week per child and $2.50 per week per child for the arrearage.

(d) On April 21, 1989, an order was entered, following Tanbal's petition for arrearage and increased support and her personal appearance before the chancery court. An order finding an arrearage amount of $7,459.85 was entered and support payments of $218.00 per month were established.

Following the chancery court's 1989 order, Tanbal returned to Arizona, and in October 1989, she filed a Petition for Judgment for Arrears in that state. Hall was served with the petition by registered mail but made no appearance. Tanbal sought a judgment in the amount of $47,700 for arrearages accumulating over the period from October 1, 1971, through June 1, 1989. In her affidavit to the court, she acknowledged that Larry Hall had made support payments pursuant to the 1971 decree and "other support orders granted in the URESA proceedings." She also stated that the 1971 Arizona decree had not been modified. The Arizona court had before it at least two of the Arkansas chancery court support orders. By order dated January 2, 1990, the Arizona court found that Hall was $34,597.97 in arrears, after giving Hall credit for support payments made. No appeal was taken by either party from the 1989 Arkansas chancery court order establishing an arrearage of $7,459.85 or from the 1990 Arizona arrearage order.

On August 27, 1992, the Phillips County Child Support Unit filed its petition for payment of arrearages against Hall to enforce the Arizona arrearage recovery order of $34,597.97. Hall moved to dismiss on grounds that the 1989 chancery court order in Phillips County was entered before the 1990 Arizona order. He further asserted that Tanbal committed fraud by representing to the Arizona court by affidavit that the 1971 divorce decree had not been modified by subsequent court order. Additionally, he urged that *res judicata* was applicable in light of the chancery court's 1989 order establishing the arrearage amount at $7,459.85. He finally contended that Tanbal should have appealed from either the Arizona or the chancery court arrearage order and was barred from further litigation on the matter because she did not.

The chancery court granted Hall's motion to dismiss and found that the Arkansas chancery court orders amended the 1971 Arizona decree. The court further concluded that the issue of the arrearage amount before the Arizona court in 1990 had previously been litigated in Arkansas and resolved under the 1989 chancery court order.

For her sole point on appeal, Tanbal urges that the Arkansas chancery court erred in dismissing the Unit's petition to enforce the Arizona arrearage order. She cites the fact that the Arkansas orders failed to specifically nullify the 1971 Arizona decree as required by the Arkansas Uniform Reciprocal Enforcement of Support Act. *See* Ark. Code Ann. § 9-14-331 (1987).[2] Under that statute, a foreign court's order could only be nullified as follows:

> A support order made by a court of this state pursuant to this subchapter does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state. (Emphasis ours.)

We have scoured the four support orders entered by the chancery court, and there is no Arkansas order specifically providing for a nullification of the 1971 Arizona decree. However, because Hall chose only to pay the support amounts awarded under the various Arkansas orders, he argues that this effected a modification of the Arizona decree. This court has previously rejected a similar argument when the obligor alleged that his Arkansas obligation was fulfilled by compliance with orders reducing support in another state. *See Britton* v. *Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987); *see also Luckes* v. *Luckes*, 262 Ark. 770, 561 S.W.2d 300 (1978). In interpreting § 9-14-331, we stated in *Britton*:

---

[2]Repealed March 12, 1993. See Footnote 1.

> Our statute clearly provides that a subsequent order does not nullify a prior order unless specifically provided by the court and that payments pursuant to another court's order are treated as credits against the original order. The Arkansas court gave full faith and credit to the Kansas court order because the Kansas payments were properly credited in reduction of the Arkansas obligation.

293 Ark. at 400, 738 S.W.2d at 410.

Hall seeks to distinguish *Britton* v. *Floyd* in the same manner as did the chancery court. He points to the various Arkansas proceedings where more than his ability to pay was explored. He also emphasizes that throughout the history of this case the chancery court in Arkansas was issuing orders with regard to the 1971 Arizona decree. The effect of these orders, according to Hall and the chancery court, was to modify that decree.

■ We do not agree. The statutory mandate here is clear and unambiguous, and *Britton* v. *Floyd* underscores that mandate. The effect of the Arkansas orders was to reduce Hall's support burden, but they had no impact on the original Arizona decree. Payments made pursuant to the Arkansas orders were properly credited against the Arizona obligation, but the Arizona decree continued in full force and effect absent a specific nullification.

■■ Hall further contends that Tanbal obtained the 1990 Arizona judgment of arrearage by fraud because she stated that the 1971 Arizona decree had not been modified. We give Hall's fraud argument no credence in light of our conclusion that none of the Arkansas chancery court orders did specifically nullify the 1971 Arizona decree as required by § 9-14-331. Further, even if Hall's allegations of fraud were true, they fall short of demonstrating fraud in the procurement of the 1990 judgment which is what is required:

> Such fraud, however, must be extrinsic to the questions presented for decision. For example, as we explained in *Alexander* v. *Alexander*, 217 Ark. 230, 229 S.W.2d 234 (1950), there is extrinsic fraud when a party is kept away from the trial or when a party is corruptly betrayed by his own attorney. "On the other hand," we went on to say, "the

doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed." Our Reports contain many cases to the same effect.

*Johnson* v. *Lbrm's Reciprocal Ins.*, 249 Ark. 550, 552, 460 S.W.2d 53, 54 (1970). Here, there is no contention that extrinsic fraud was practiced upon the Arizona court in the procurement of the 1990 judgment itself. *See Ark. State Hwy. Comm.* v. *Clemmons*, 244 Ark. 1124, 428 S.W.2d 280 (1968).

Reversed and remanded for further proceedings consistent with this opinion.