## JEFFERSON COUNTY CHILD SUPPORT ENFORCEMENT UNIT *v.* Vollie HOLLANDS, II

96-474                                    939 S.W.2d 302

Supreme Court of Arkansas
Opinion delivered March 3, 1997

*Catherine J. Waddell* and *Eugene Hunt*, for appellant.

No response.

DAVID NEWBERN, Justice. On September 22, 1995, appellant Jefferson County Child Support Enforcement Unit ("JCCSEU") filed a motion in the Jefferson Chancery Court that, in essence, sought to register a 1982 Michigan child-support order for enforcement in Arkansas under the Uniform Interstate Family Support Act ("UIFSA"). The motion stated that, under the Michigan decree, appellee Vollie Hollands, II, owed to his former wife Constance Hollands an accumulated child-support arrearage of $39,642.50. The Chancellor denied the JCCSEU's motion to fix the arrearage at this level and stated he was not obligated to enforce a Michigan support decree filed under UIFSA because Michigan had not enacted that statute. The Chancellor further indicated that one of his previous orders, entered under the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"), had modified Mr. Hollands's support obligation under the original Michigan decree and that, in light of Mr. Hollands's payments pursuant to the Chancellor's RURESA order, the remaining arrearage was fixed at $15,298. As we find both of the Chancellor's conclusions to be erroneous, we reverse and remand the case for further proceedings consistent with our opinion and the procedures described in UIFSA. Ark. Code Ann. §§ 9-17-101 to 9-17-905 (Repl. 1993).

On December 29, 1982, Ms. Hollands was awarded a judgment of divorce against Mr. Hollands by the Circuit Court of Kalamazoo County, Michigan. The Michigan court awarded custody of the parties' son, Vollie Hollands, III, to Ms. Hollands and ordered Mr. Hollands to pay child support in the amount of $87 per week.

Ms. Hollands returned to the Michigan court in April 1988 and filed a petition under RURESA to enforce the child-support award against Mr. Hollands in Jefferson County. Ms. Hollands alleged that Mr. Hollands had ceased making support payments in March 1987, and she petitioned the Michigan court to forward the relevant papers to the Jefferson Chancery Court so that it could order Mr. Hollands to pay his weekly support obligation of

$87 and to pay $50 per week on the accrued arrearage of $18,481, or, alternatively, to pay "any such sum" as the Chancery Court determined "to be fair and reasonable." On April 20, 1988, the Michigan court filed a "certificate and order" finding that Mr. Hollands owed a duty of support to his son and requesting the Chancery Court to "enter an order for support directed to [Mr. Hollands] as such Court shall determine to be fair and reasonable . . . ." The Michigan court forwarded to the Jefferson Chancery Court copies of Ms. Hollands's RURESA petition, the divorce decree, the certificate and order, and the Michigan RURESA. These documents were filed in the Chancery Court on October 27, 1988, in accordance with the Arkansas RURESA.

On November 4, 1988, the Chancery Court entered an order acknowledging that $18,481 was the amount owed by Mr. Hollands for the arrearage that had accrued under the Michigan court's decree prior to the filing of that decree in the Chancery Court under RURESA. In the same order, however, the Chancery Court prospectively reduced Mr. Hollands's child-support payment from $87 per week to $25 per week and ordered Mr. Hollands to pay $5 per week on the $18,481 arrearage. The Chancery Court continued to order lesser amounts in subsequent orders, and it based its determination of the arrearage that accrued after the Michigan decree was filed in the Chancery Court on the various lesser support awards instead of the Michigan court's original award of $87 per week. In an order entered on July 10, 1992, the Chancery Court stated that the amount of the arrearage had increased to $20,091, and it ordered Mr. Hollands to pay a weekly child-support payment of $107.50 and to pay the same amount toward the accrued arrearage.

On February 21, 1995, the Family Support Division of the Kalamazoo County Prosecutor's Office in Michigan filed a petition with the JCCSEU requesting it to register the 1982 Michigan support decree in the Chancery Court for enforcement under UIFSA. Act 468 of 1993 had repealed RURESA, which last appeared at Ark. Code Ann. §§ 9-14-301 to 9-14-344 (Repl. 1991), and adopted UIFSA in its place. *See* Ark. Code Ann. §§ 9-17-101 to 9-17-905 (Repl. 1993). The UIFSA petition filed by

the Michigan authorities with the JCCSEU stated that Ms. Hollands had received her last support payment on December 20, 1994, and that the amount of arrearage owed by Mr. Hollands for the period from July 9, 1982, to February 3, 1995, was $39,642.50. This amount was based upon the Michigan court's original support award of $87 per week.

As we mentioned above, the JCCSEU then filed on September 22, 1995, a motion in the Chancery Court seeking to enforce the Michigan decree under UIFSA. Although we are puzzled by the style of the motion — *i.e.,* a "motion to convert URESA action to UIFSA action" — it is clear to us that the motion simply sought to register the 1982 Michigan decree for enforcement under UIFSA and to request the Chancellor to calculate the arrearage owed by Mr. Hollands with reference to the Michigan court's award of $87 per week rather than the Chancery Court's modified support awards. The JCCSEU attached to its motion the UIFSA petition and accompanying exhibits filed by the Michigan authorities. Mr. Hollands filed a response to the JCCSEU's motion and simply denied the allegations and requested that the motion be dismissed.

The Chancery Court denied the JCCSEU's motion at the conclusion of a hearing held on December 5, 1995. As we indicated, there are two apparent bases for the Chancellor's ruling. First, the Chancellor stated that he was not obligated to enforce the Michigan support order under UIFSA because Michigan had not yet enacted that statute.

Second, the Chancellor stated that he was authorized to "modify" the Michigan court's original support award; that his order of July 10, 1992, effectively modified the Michigan decree; and that the remaining arrearage due to Ms. Hollands had to be calculated with reference to that order. According to the Chancellor, the language in Ms. Hollands's 1988 RURESA petition and the Michigan court's certificate and order requesting him to award a "fair and reasonable" amount of child support permitted him to modify the Michigan court's original award of $87 per week. The Chancellor maintained that he did just that with his

order on July 10, 1992, which apparently was the last order modifying Mr. Hollands's support obligation and which established the arrearage due to Ms. Hollands at $20,091. The Chancellor indicated that Mr. Hollands had made payments pursuant to this order and thereby had reduced the arrearage to $15,298. The Chancellor accepted this sum as the remaining arrearage due to Ms. Hollands, and he declined to refigure the amount using the Michigan court's award because he knew of no authority "by which we could go back and set aside an order that's been on the books seven years." The Chancellor ordered Mr. Hollands to continue making child-support payments in accordance with the July 1992 order.

## 1. *Reciprocity under UIFSA*

We first address the suggestion made by the Chancellor that a state that has enacted UIFSA may decline to enforce a sister state's support decree filed under UIFSA if the sister state has not adopted that statute. We do not agree that Michigan's failure to enact UIFSA permitted the Chancellor to decline to enforce the Michigan decree that was filed pursuant to the Arkansas UIFSA. We find nothing in the language of our statute that imposes a reciprocity limitation, and we therefore conclude that the General Assembly did not intend to make the UIFSA procedures available only to those states that have adopted UIFSA.

Our conclusion is supported by the following statutory commentary:

### 3. RECIPROCITY NOT REQUIRED.

Reciprocity of laws between states is no longer required because at present all states have quite similar laws, and the enacting state should enforce a support obligation irrespective of another state's law. Nonetheless, consistent with past practice, URESA, RURESA and all substantially similar state laws are deemed equivalent to UIFSA . . . for purposes of interstate actions . . . . This means that any of these acts can be used if different states have different versions in effect, which should help ease the transition to the new Act . . . .

Commentaries on Ark. Code Ann. § 9-17-101 *et seq.*, Vol. B, at p. 327 (Repl. 1995). Thus, it was error for the Chancellor to base his decision to deny the JCCSEU's motion on the failure of the State of Michigan to adopt UIFSA.

### 2. *Modification of original support decree under RURESA*

The other reason given by the Chancellor for denying the JCCSEU's motion was that one of the orders he had entered pursuant to RURESA seven years previously had "modified" the Michigan court's support decree and could not be "set aside." Therefore, according to the Chancellor, the prior order he had entered under RURESA controlled the calculation of the child-support arrearages owing to Ms. Hollands.

As noted above, the General Assembly repealed RURESA when it enacted UIFSA, and the motion brought by the JCCSEU on behalf of the State of Michigan was brought under UIFSA rather than RURESA. Nonetheless, we must apply RURESA and the case law interpreting it in order to ascertain the effect, if any, of the Chancellor's previous RURESA order upon the original Michigan support decree. *Office of Child Support Enforcement v. Troxel,* 326 Ark. 524, 526, 931 S.W.2d 784, 785 (1996). The Chancellor's RURESA order entered in July 1992 did not nullify the Michigan decree; thus the Chancellor erred in refusing to calculate the amount of arrearages owed by Mr. Hollands with reference to the Michigan court's award of $87 per week in child support.

As we observed in the *Troxel* case, the effect of an Arkansas court's RURESA order upon a sister state's support decree must be determined in light of RURESA's "anti-supersession clause," which provides in part as follows:

> A support order made by a court of this state pursuant to this subchapter does not nullify . . . a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of

> another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.

Ark. Code Ann. § 9-14-331 (Repl. 1991)(repealed 1993).

■ In the *Troxel* case, we cited *Tanbal v. Hall,* 317 Ark. 506, 878 S.W.2d 724 (1994), and *Britton v. Floyd,* 293 Ark. 397, 738 S.W.2d 408 (1987), for the proposition that an Arkansas court does not nullify or supersede a sister court's support decree in a RURESA proceeding unless it *specifically* provides for nullification. Absent express words of nullification, we said, an order filed by an Arkansas court that imposes a child-support obligation different from the obligation originally imposed by the sister state does not change or modify the sister state's decree.

■ Although an Arkansas court is free to require a lesser payment from the obligor spouse, the obligor spouse remains obliged for the difference between the original award and the modified award unless the order reducing the support obligation expressly nullifies the sister state's decree. If there are no express words of nullification, the sister state's decree remains extant, and arrearages accrue under the *original* support obligation even as the obligor satisfies the *locally ordered* support obligation. The obligor, of course, is entitled to credit for any payments he or she makes under the orders of the Arkansas court reducing the child-support obligation.

In the *Troxel, Tanbal,* and *Britton* cases, this Court reviewed the Arkansas courts' orders and found no express words of nullification. We therefore concluded that the sister state's decree remained in effect and that the obligee spouse was entitled to an arrearage as calculated under the original decree. Likewise, in the case at bar, the orders of the Chancellor do not contain express words of nullification. Therefore, we must conclude that the Chancellor failed to effect a "nullification" of the Michigan order and that the Chancellor erred in refusing the JCCSEU's request to determine the arrearage owed to Ms. Hollands based on the Michigan court's decree awarding $87 per week in child support.

We agree with the courts of other jurisdictions that the "responding court" in a RURESA action, such as the Jefferson Chancery Court in this case, "may enter its own support order prospectively raising or lowering the amount of the support obligation, if the circumstances before it warrant such a change." *White-Nathan v. Nathan*, 888 P.2d 237, 240 (Ariz.App. Div. 1 1994). However, "a variation between the support amount provided in the RURESA order and that in the underlying support order does not in itself alter or modify the underlying support order." *Id.* If the RURESA order of the "responding court" does not specifically provide that it is modifying or nullifying the underlying support order, "the RURESA support order does not nullify or supersede the original support order, and arrearages will continue to accumulate under that order." *Id.* at 241. *See also Kranz v. Kranz*, 525 N.W.2d 777, 781 (Wis.App. 1994)(stating that it "is sensible to require a responding court to enforce only the level of support it determines is reasonable under its laws," but maintaining that the responding court's "determination does not affect the enforceability of the support ordered in the initiating court's prior judgment"); *Wade v. Wade*, 552 So.2d 1279, 1281 (La.App. 5 Cir. 1989)("The trial court is correct in its finding that the defendant is entitled to credit for amounts paid pursuant to the Alabama URESA order, but is still in arrears for the difference between that amount and the amount due on the Louisiana order, since no modification by the Alabama court supersedes the Louisiana judgment."). *See* Annotation, 31 A.L.R. 4th 347 (1984).

Because the Chancellor erroneously evaluated the effect of his previous RURESA order on the original Michigan decree, we must reverse and remand this case for further proceedings consistent with this opinion and the procedures specified in UIFSA.