OFFICE of CHILD SUPPORT ENFORCEMENT *v.*
Michael B. NEELY

CA 00-789 41 S.W.3d 423

Court of Appeals of Arkansas
Division IV
Opinion delivered April 4, 2001
[Petition for rehearing denied May 2, 2001.]

*Greg L. Mitchell*, for appellant.

*Ronald L. Griggs*, for appellee.

SAM BIRD, Judge. This is a child-support case involving a 1983 Texas divorce decree. Tommie Neely and appellee Michael Neely were divorced in Texas on September 13, 1983, and appellee was ordered to pay $210 per month child support for one child. After appellee moved to Arkansas, appellant, Office of Child Support Enforcement, filed a petition in the Union County Chancery Court under the Revised Uniform Reciprocal Enforcement of Support Act (hereinafter "RURESA") seeking to enforce the Texas decree for judgment on the arrearages and for an increase in child support. The court entered an agreed order on August 29, 1984, that reduced appellee's child-support obligation to $30 per week and awarded appellant a $300 judgment against appellee for arrearages. Tommie and the child later moved to Oklahoma. On referral from Oklahoma's Child Support Enforcement Division, appellant filed a petition in Union County Chancery Court in 1991 for an

increase in child support and for judgment on the arrearages accruing under the 1984 order. Referring to the 1984 order setting appellee's obligation at $30 per week, the chancellor entered judgment in favor of appellant on November 26, 1991, in the amount of $2,203 and directed that appellee's support obligation would remain at $30 per week.

On August 3, 1998, appellant filed another petition for arrearages in Union County Chancery Court based on the $30 weekly amount. However, on appellant's motion, an order dismissing that petition was entered on December 15, 1998.

On December 15, 1998, appellant filed a petition pursuant to the Uniform Interstate Family Support Act (hereinafter "UIFSA") to register the 1983 Texas divorce decree and requesting judgment for arrearages in the amount of $22,816 based upon the $210 monthly child support amount specified in that decree. (Act 468 of 1993 enacted UIFSA and repealed RURESA. *See Office of Child Support Enforcem't v. Cook,* 60 Ark. App. 193, 959 S.W.2d 763 (1998).) Appellee was notified of the petition to register the 1983 Texas decree and was informed that he had twenty days within which to contest its registration. Appellee did not contest registration of the Texas decree or request a hearing within twenty days. By a January 20, 1999, order of the Union County Chancery Court, the Texas decree was registered.

Appellant filed a contempt motion against appellee on February 22, 1999, alleging that appellee's monthly child-support obligation remained at $210, as set by the 1983 Texas decree. Appellant sought judgment against appellee for an arrearage of $23,246.10, which it alleged to be the balance owed after giving appellee credit for all payments he had made. Appellee filed an answer to this motion in which he denied all of the allegations. Following a hearing, the chancellor rendered two orders, the combined effect of which was to hold that the 1983 Texas divorce decree did not repeal or take precedence over the subsequent Arkansas RURESA orders that reduced appellee's child support obligation to $30 per week, that the Agreed Order of the Union County Chancery Court entered August 29, 1984, effectively modified the Texas divorce decree by changing his child-support obligation to $30 per week, that appellee's failure to object to the registration of the Texas divorce decree did not have the effect of causing appellee to be in default, and that the Arkansas General Assembly's repeal of the Uniform Reciprocal Enforcement of Support Act subsequent to the entry of the August 29, 1984, and November 26, 1991, orders

of the Union County Chancery Court constituted an *ex post facto* law prohibited by the Constitutions of the United States and Arkansas.

The chancellor entered judgment in favor of appellant for arrearages in the amount of $2,690.56, based on the $30 weekly child-support amount set in the 1984 RURESA order, and increased appellee's support obligation to $68 per week based on current income.

Appellant argues on appeal that the chancellor erred in holding that the August 29, 1984, RURESA order, rather than the 1983 Texas decree registered in Arkansas under UIFSA, was the controlling order as to child support because (1) the 1984 RURESA order did not modify the Texas decree and (2) appellee did not contest registration of the Texas decree under UIFSA's provisions. Appellant also argues that the chancellor erred in modifying appellee's child-support obligation.

■ On appellate review of ordinary equity cases, there are two different components of the chancellor's ruling that are considered: the appellate court will not set aside a chancellor's finding of fact unless it is clearly erroneous; this deference is granted because of the regard that the appellate court has for the chancellor's opportunity to judge the credibility of the witnesses. *Duchac v. City of Hot Springs*, 67 Ark. App. 98, 992 S.W.2d 174 (1999). However, a chancellor's conclusion of law is not entitled to the same deference; if a chancellor erroneously applies the law and the appellant suffers prejudice, the erroneous ruling is reversed; a chancellor does not have a better opportunity to apply the law than does the appellate court. *Id.*

### Whether the 1984 RURESA Order Modified the Texas Decree

■■ In *Jefferson County Child Support Enforcem't Unit v. Hollands*, 327 Ark. 456, 939 S.W.2d 302 (1997), the supreme court held that, in a RURESA proceeding, an Arkansas court does not nullify or supersede a sister court's support decree unless it specifically provides for nullification; absent express words of nullification, an order filed by an Arkansas court that imposes a child-support obligation that is different from the obligation originally imposed by the sister state does not change or modify the sister state's decree. In *Hollands*, the chancellor denied the child support unit's motion to

enforce a Michigan child-support order on the ground that a Jefferson County Chancery Court order entered pursuant to RURESA seven years previously had modified the Michigan court's support decree and that, therefore, the Jefferson County order controlled the calculation of arrearages. The supreme court's explanation for its decision to reverse warrants consideration here:

> As noted above, the General Assembly repealed RURESA when it enacted UIFSA, and the motion brought by the JCCSEU on behalf of the State of Michigan was brought under UIFSA rather than RURESA. Nonetheless, we must apply RURESA and the case law interpreting it in order to ascertain the effect, if any, of the Chancellor's previous RURESA order upon the original Michigan support decree. *Office of Child Support Enforcement v. Troxel,* 326 Ark. 524, 526, 931 S.W.2d 784, 785 (1996). The Chancellor's RURESA order entered in July 1992 did not nullify the Michigan decree; thus the Chancellor erred in refusing to calculate the amount of arrearages owed by Mr. Hollands with reference to the Michigan court's award of $87 per week in child support.

> As we observed in the *Troxel* case, the effect of an Arkansas court's RURESA order upon a sister state's support decree must be determined in light of RURESA's "anti-supersession clause," which provides in part as follows:

>> A support order made by a court of this state pursuant to this subchapter does not nullify ... a support order made by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, unless otherwise specifically provided by the court. Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state.

> Ark. Code Ann. § 9-14-331 (Repl. 1991) (repealed 1993).

> In the *Troxel* case, we cited *Tanbal v. Hall,* 317 Ark. 506, 878 S.W.2d 724 (1994), and *Britton v. Floyd,* 293 Ark. 397, 738 S.W.2d 408 (1987), for the proposition that an Arkansas court does not nullify or supersede a sister court's support decree in a RURESA proceeding unless it *specifically* provides for nullification. Absent express words of nullification, we said, an order filed by an Arkansas court that imposes a child-support obligation different from the

obligation originally imposed by the sister state does not change or modify the sister state's decree.

Although an Arkansas court is free to require a lesser payment from the obligor spouse, the obligor spouse remains obliged for the difference between the original award and the modified award unless the order reducing the support obligation expressly nullifies the sister state's decree. If there are no express words of nullification, the sister state's decree remains extant, and arrearages accrue under the *original* support obligation even as the obligor satisfies the *locally ordered* support obligation. The obligor, of course, is entitled to credit for any payments he or she makes under the orders of the Arkansas court reducing the child-support obligation.

In the *Troxel, Tanbal,* and *Britton* cases, this Court reviewed the Arkansas courts' orders and found no express words of nullification. We therefore concluded that the sister state's decree remained in effect and that the obligee spouse was entitled to an arrearage as calculated under the original decree. Likewise, in the case at bar, the orders of the Chancellor do not contain express words of nullification. Therefore, we must conclude that the Chancellor failed to effect a "nullification" of the Michigan order and that the Chancellor erred in refusing the JCCSEU's request to determine the arrearage owed to Ms. Hollands based on the Michigan court's decree awarding $87 per week in child support.

327 Ark. at 462-63, 939 S.W.2d at 305-06. *Accord, Office of Child Support Enforcem't v. Eagle,* 336 Ark. 51, 983 S.W.2d 429 (1999); *Office of Child Support Enforcem't v. Troxel,* 326 Ark. 524, 931 S.W.2d 784 (1996).

■ The 1984 Union County RURESA order did not contain any language of modification or nullification of the 1983 Texas divorce decree, nor did the 1991 order. Following the foregoing authorities, we are constrained to hold that the 1984 RURESA order did not modify the Texas decree and that arrearages continued to accrue under the Texas decree even as appellee satisfied the Arkansas order's obligation.

■ We also agree with appellant that the chancellor erred in applying the *Ex Post Facto* Clause of the federal and Arkansas constitutions to this situation. That clause is violated by any statute that punishes as a crime an act previously committed that was innocent when done; that makes more burdensome the punishment for a crime, after its commission; that deprives one charged with a

crime of any defense available according to the law at the time when the act was committed; or that purports to make innocent acts criminal after the event. *Kellar v. Fayetteville Police Dep't*, 339 Ark. 274, 5 S.W.3d 402 (1999).

 Appellee argues that it would be inequitable to give appellant judgment for the arrearages accrued on the 1983 Texas decree after he has made payments for years pursuant to the 1984 order to which appellant agreed. He contends that the chancellor could have employed the equitable principles of waiver, laches, and estoppel to refuse to enforce the Texas decree. It is true that Arkansas courts have recognized that, in a proper case, equitable defenses such as estoppel may apply so as to prevent the collection of past-due child-support payments. *See Burnett v. Burnett*, 313 Ark. 599, 855 S.W.2d 952 (1993); *State v. Mitchell*, 61 Ark. App. 54, 964 S.W.2d 218 (1998). However, we are precluded from considering this question because appellee did not raise these affirmative defenses to the trial court. A ruling by the chancellor on a challenged issue is a prerequisite to our review of that issue. Even questions raised at the trial level, if left unresolved, are waived and may not be relied upon on appeal. *Kralicek v. Chaffey*, 67 Ark. App. 273, 998 S.W.2d 765 (1999).

### The Effect of Appellee's Failure to Contest the Registration of the Texas Decree

 Appellant also argues that appellee's failure to contest the registration of the Texas decree or to request a hearing within twenty days after he received notice of its registration bars his defense to its enforcement. We agree. Arkansas Code Annotated section 9-17-606 (Repl. 1998) states:

> (a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this state shall request a hearing within twenty (20) days after notice of the registration. The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to § 9-17-607 (Contest of registration or enforcement).

> (b) If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law.

(c) If a nonregistering party requests a hearing to contest the validity or enforcement of the registered order, the registering tribunal shall schedule the matter for hearing and give notice to the parties of the date, time, and place of the hearing.

Therefore, under section 9-17-606, the only method for contesting the validity of a foreign support order is to request a hearing within twenty days after notice of registration. *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999). Arkansas Code Annotated section 9-17-608 (Repl. 1998) provides that once a registered support order is confirmed, whether by operation of law or after notice and a hearing, further contest of the order is precluded.

 After appellant filed its February 22, 1999 motion, appellee argued that the Texas order had been modified. *See* Ark. Code Ann. § 9-17-607(a)(3). However, he failed to contest the Texas order's registration or ask for a hearing within twenty days after receiving notice of its registration. We therefore agree with appellant that appellee was precluded from later contesting its enforcement.

*Whether the Chancellor Could Modify*
*Appellee's Child-Support Obligation*

 Appellant also asserts that the chancellor erred in modifying appellee's support obligation. We note that in its motion for contempt, appellant requested that appellee's support obligation be increased. However, regardless of who requested the modification, the statutory requirements for modifying the Texas decree have not been met. Arkansas Code Annotated section 9-17-603(c) (Repl. 1998) provides: "Except as otherwise provided in article 6, a tribunal of this state shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction." Arkansas Code Annotated section 9-17-611 (Repl. 1998) places the following limitations upon the modification of child-support orders issued in other states:

(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if § 9-17-613 does not apply and after notice and hearing it finds that:

(1) the following requirements are met:

(i) the child, the individual obligee, and the obligor do not reside in the issuing state;

(ii) a petitioner who is a nonresident of this state seeks modification; and

(iii) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under this chapter, the consent otherwise required of an individual residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.

Unless these statutory requirements with respect to the limitations placed upon the modification of foreign child-support orders are met, such orders cannot be modified. *See Office of Child Support Enforcem't v. Cook, supra.*

 Here, Tommie's participation in appellant's request for a support increase is not apparent from this record. Additionally, all of the individual parties have not filed written consents for a court of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. Therefore, the requirements for modification set forth in Ark. Code Ann. § 9-17-611 have not been met, and the chancellor erred in modifying appellee's support obligation. *See Office of Child Support Enforcem't v. Cook, supra.*

 We therefore must hold that the chancellor erred in refusing to enforce the Texas decree and refusing to award appellant judgment for the difference between the arrearages accrued under that decree and the amount paid by appellee. For this reason, we reverse and remand to the trial court for the entry of judgment in favor of appellant for the amount of child support due under the Texas decree, less all credits to which appellee is entitled.

Reversed and remanded.

ROBBINS, J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. Once again, an Arkansas child-support payor has been entrapped by the federally imposed quagmire that constitutes our URESA and UIFSA statutes and case-law interpretations. *See Jefferson County Child Support Enforcem't Unit v. Holland*, 327 Ark. 456, 939 S.W.2d 302 (1997). In this instance, Michael B. Neely will be saddled with an arrearage judgment of $22,816 rather than the $2,690 he would have owed pursuant to the modified support order entered by the Union County Chancery Court some sixteen years earlier. This is because Neely's 1984 and subsequent Arkansas support orders did not contain the "express words of nullification" that would have allowed the Arkansas order to supersede or replace Neely's 1983 Texas divorce decree. The cases mandating such language were all decided after the 1984 support order was entered. See *Office of Child Support Enforcem't v. Troxel*, 326 Ark. 524, 931 S.W.2d 784 (1996); *Tanbal v. Hall*, 317 Ark. 506, 878 S.W.2d 724 (1994); *Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987). I concur, not so much to take issue with these decisions, but to note that there must be hundreds, if not thousands, of unsuspecting Arkansans who face the same unhappy fate as Mr. Neely, many of whom may not even be in arrears in their child-support payments pursuant to their URESA or UIFSA support orders. This court may not consider Neely's argument that this result is inequitable because he failed to raise any equitable defenses before the chancellor. However, counsel for child-support payors would be well advised not to omit these defenses in the many like cases that undoubtedly are coming down the pike.